**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| SHBD, LLC,<br>Barbara O'Neill,<br>Michael O'Neill,<br><br>*Plaintiffs,*<br><br>v.<br><br>Emma M. Loberg,<br>MISTY MOUNTAIN USA LLC,<br>BARBARAONEILL.COM LLC,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No._____________ |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES…………………………………………………...iii

INTRODUCTION………………………………………………………………1

STATEMENT OF FACTS………………………………………………………1

ARGUMENT……………………………………………………………………...11

I. Plaintiffs are Substantially Likely to Succeed on the Merits Against Defendants' "Assignment" Agreement, the Execution of Which Defendant Loberg Fraudulently Induced and the Terms of Which are Unconscionable…………………………………………………12

II. Plaintiffs are Substantially Likely to Succeed on the Merits Against Defendant's Retention of the Domain Name, *BarbaraO'Neill.com* and Use Likely to Cause Mistake as to Affiliation With or Approval of Barbara O'Neill in Violation of 15 U.S.C. § 1125……………….14

III. Plaintiff Barbara O'Neill is Likely to Succeed on the Merits of Her Claim of Defendants' Misappropriation of her Name and Likeness in Violation of her Common Law Right of Publicity……………….18

IV. Plaintiffs Will Suffer Actual Irreparable Harm if Relief is Not Granted…………………………………………………………19

V, The Balance of Hardships Tips Sharply in Plaintiffs' Favor, and Entry of Relief to Plaintiff Service Public Interest…………………21

VI. The Court Should Waive the Bond Requirement Because Plaintiffs Seek Only to Protect Plaintiff Barbara O'Neill's Intellectual Property and Right of Publicity………..………………………22

CONCLUSION…………………………………………………………...22

CERTIFICATE OF REASONABLE EFFORTS TO GIVE NOTICE OF TRO AND OF CONFERENCE……………………………………………24

CERTIFICATE OF SERVICE……………………………………………..25

EXHIBITS

1. Statement of Barbara Esther O'Neill dated March 26, 2025
2. Statement of Barbara O'Neill dated March 20, 2025
3. U.S. Copyright Reg. TX 9-412-670 for "Sustain Me …" Handbook
4. Notarized Statement of Barbara Esther O'Neill dated Feb. 5, 2025
5. Notarized Statement of Jacqueline Viola Bourne dated Feb. 5, 2025
6. Statement of Michael John O'Neill dated Feb. 5, 2025
7. Letter from Plaintiffs' counsel Karen Tripp to Defendants' counsel Derek Staub dated April 30, 2025; Letter from Defendants' counsel Derek Staub to Plaintiff's counsel Karen Tripp dated May 6, 2025; Letter from Plaintiffs' counsel Karen Tripp to Defendants' counsel Derek Staub dated May 19, 2025
8. U.S. Trademark Application No. 99061418 for "BARBARA O'NEILL" mark
9. U.S. Copyright Assignment Recordation Documents
10. Screenshots from *Barbaraoneill.com*, taken July 1-2, 2025

11. Screenshots from Instagram pages for BarbaraO'Neill and Emma Loberg, taken July 2, 2025.

# TABLE OF AUTHORITIES

**Cases**

*Brecka v. Individuals,*
2024 U.S. Dist. LEXIS 52864; 2024 WL 1178978
(S.D. Fla. 2024)………………………………………...…12, 13, 21, 22

*Cottonwood Financial, Ltd v. Estes,*
2010 WI App. 75, ¶ 4, 325 Wis. 749, 784 N.W. 2d 726 (Wis. Ap. 2010)…13

*Diller v. Barry Driller, Inc.,*
2012 U.S. Dist. LEXIS 133515 (C.D. Cal. 2012)……………...16, 20, 21, 22

*Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co.,*
117 Wis. 2d 2587, 345 N.W. 2d 417 (Wis. 1984)…………………………13

*Fitzgerald v. Wells Fargo & Co.,*
2025 U.S. Dist. LEXIS 242076, 2025 WL 457980 (E.D. Wisc. 2025)……13

*Hall v. Wingate,*
159 Ga. 630, 126 S.E. 796 (Ga. 1924)……………………………………..13

*Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624 (5th Cir. 1996)………………………..22

*Martin Luther King, Jr. Ctr for Soc. Change, Inc. v. American Heritage Prods, Inc.,*
250 Ga. 1335, 296 S.E.2d 697 (Ga. 1982)…………………………………18

*Most Worshipful Nat'l Grand Lodge v. United Grand Lodge FA AF & AYM, Inc.,*
813 Fed. Appx. 455 (11th Cir. 2020)………………………………………16

*Nafra Worldwide, LLC v. Home Depot U.S.A., Inc.*
2013 U.S. Dist. LEXIS 201841, 2013 WL 12098772 (N.D. Ga. 2013)…...13

*Seed Services, Inc. v. Winsor Grain, Inc.,*
868 F. Supp. 2d 998 (E.D. Cal. 2012)……………………………………...20

*Schiavo ex Rel. Schnidler v. Schiavo,*
403 F.3d 1223 (11th Cir. 2005)……………………………………………..12

*Tana v. Dantanna's,*
611 F.3d 767 (11th Cir. 2010)………………………………………………16

*Toffoloni v. LFB Publishing Group,*
572 F.3d 1201 (11th Cir. 2009)……………………………………………..18

*Villalobos v. EZCorp., Inc.,*
2013 U.S. Dist. LEXIS 97998, 2013 WL 3732875 (W.D. Wis. 2013)…….13

*Wendt v. Host International, Inc.,*
125 F.3d 806 (9th Cir. 1997)………………………………………………..16

**Statutes**

15 U.S.C. § 1125(a)……….…………………………………………………16

O.C.G.A. § 11-2-302(1)…………………………………………………...13

## INTRODUCTION

This lawsuit and motion concern Defendants' claim to, and exercise of control over, essentially all of Plaintiff Barbara O'Neill's copyrights, trademarks, and rights of publicity, that she has earned, and that she will earn in the future, notwithstanding the protests and objections by Plaintiff Barbara O'Neill and the other Plaintiffs.

Defendant Emma Loberg, for herself and her companies who are the other Defendants, is essentially holding herself out as Barbara O'Neill herself or as Barbara O'Neill's successor to all of these rights of Barbara O'Neill. Defendants are thus confusing the public into thinking that Defendant Emma Loberg is Barbara O'Neill, or is sponsored by, endorsed by, approved by, or otherwise associated with Barbara O'Neill. Defendants use the claimed website at *www.barbaraoneill.com*, an associated mailing list, and a fraudulently obtained but alleged "transfer" of copyrights and trademark rights in dispute herein to effect and further that confusion.

## STATEMENT OF FACTS

Plaintiff Barbara O'Neill is an internationally recognized and popular author, speaker, and teacher, advocating a healthy lifestyle. (Dkt. 1, Verif. Compl. ¶ 4). She provides on-line courses, holds conferences where she lectures all over

the world, and has a retreat in Australia promoting keys to a healthy life. (Dkt. 1, Verif. Compl. ¶ 4). Plaintiff Barbara O'Neill has also written two books on her subjects which have sold millions of copies worldwide. (Dkt. 1, Verif. Compl. ¶ 4; Exh. 1, Stmt B. O'Neill dated March 26, 2025)

Defendant Emma M. Loberg was the distributor for Plaintiff Barbara O'Neill's books in the United States. (Dkt. 1, Verif. Compl. ¶ 6). She also helped Plaintiff Barbara O'Neill, her mother, with internet marketing and had indicated she was helping her mother protect her intellectual property. (Dkt. 1, Verif. Compl. ¶ 6). Instead, however, Defendant Loberg was beginning a pattern of taking her mother's intellectual property for herself. (Exh. 2, Stmt of B. O'Neill dated March 20, 2025; Exh. 3, U.S. Copyright Reg. TX 9-412-670), Exh. 6, Stmt of M. O'Neill, 2d p., ¶¶1-7.

Plaintiff Barbara O'Neill spoke in Ringgold, Georgia in February 2025. (Dkt. 1, Verif. Compl. ¶ 4). For that event, she traveled from Dubai to Ringgold, Georgia on February 3, 2025. (Dkt. 1, Verif. Compl. ¶ 14). Defendant Loberg, who resides in Wisconsin, arrived unexpectedly to visit with Plaintiff Barbara O'Neill. (Dkt. 1, Verif. Compl. ¶¶ 14, 15). That evening, Plaintiff Barbara O'Neill, weary from her travels and feeling ill, took a hot shower and turned in to bed. Defendant Emma Loberg then entered Plaintiff Barbara O'Neill's room under

the guise of wanting to give her mother a massage to help her sleep, but taking along a laptop computer. (Dkt 1, Verif. Compl. ¶16; Exh. 4, Notar. Stmt of B. O'Neill, ¶¶ 3,4; Exh. 5, Notar. Stmt of J. Bourne, ¶¶ 3, 4)

Before beginning the massage, Defendant Loberg asked to take Plaintiff Barbara O'Neill's picture, to which she agreed, thinking nothing of her daughter wanting a picture of her. (Dkt 1, Verif. Compl. ¶16; Exh. 4, Notar. Stmt of B. O'Neill, ¶¶ 3, 10). Then, as Defendant Loberg was giving Plaintiff Barbara O'Neill a massage, and she was falling asleep, Defendant Loberg asked her or helped her to place her finger on the screen of the laptop computer Defendant Loberg had. (Dkt 1, Verif. Compl. §17; Exh. 4, Notar. Stmt of B. O'Neill, ¶ 4). Defendant Loberg was also talking with a person sounding like a man on the phone. (Dkt 1, Verif. Compl. §17; Exh. 4, Notar. Stmt of B. O'Neill, ¶ 4). When Plaintiff Barbara O'Neill queried Defendant Loberg as to why she was putting her finger on the computer, Defendant Loberg replied that she loved her and wanted to protect her. (Dkt 1, Verif. Compl. §17; Exh. 4, Notar. Stmt of B. O'Neill, ¶ 4).Barbara O'Neill did not understand what Defendant Loberg meant but felt so ill she just wanted to sleep. (Dkt 1, Verif. Compl. §17; Exh. 4, Notar. Stmt of B. O'Neill, ¶ 4).Defendant Loberg left about half an hour later. (Dkt 1,

Verif. Compl. ¶17; Exh. 4, Notar. Stmt of B. O'Neill, ¶ 4; Exh. 5, Notar. Stmt of J. Bourne, ¶ 6.

Two days later, on February 5, 2025, Barbara O'Neill's husband, Plaintiff Michael O'Neill, had a meeting with Defendant Loberg and her lawyer, Derek Staub. In that meeting, Michael O'Neill asked Defendant Loberg what her asking Barbara O'Neill to touch the computer had been for, and Defendant Loberg and her lawyer advised Michael O'Neill that Barbara O'Neill had signed over the copyrights in all of her books to Defendant Loberg with her fingerprint. (Dkt. 1, Verif. Compl. ¶ 18; Exh 6, Stmt of M. O'Neill, 2d p, ¶¶ 2-7. Exh.7, Ltr from D. Staub, Defs' counsel; also see this Assignment Agreement at Dkt. 1, Verif. Compl. Exh. A.)

Plaintiff Barbara O'Neill was surprised to learn of this signing and never agreed to sign ownership, rights, use or stewardship of any of her work or copyrights to Defendant Loberg. (Dkt. 1, Verif. Compl. ¶ 19; Exh. 4, Notar. Stmt of B O'Neill, ¶¶ 5-8). The agreement recites no specific consideration for the assignment (Dkt 1, Verif. Compl., Exh. A), and none is known.

The alleged "Assignment Agreement" at Dkt 1, Exhibit A, to the Complaint states as "Background" that:

> The Assignor [Barbara O'Neill) desires to assign all her United States, Canada, and Mexico rights associated with her work as an author, speaker

> and promoter of health and wellness, including without limitation Assignor's books (which includes without limitation "Sustain Me," "Self Heal By Design," and "A Taste of Misty Mountain"), writings, presentations, speaking engagements and performances, her online website and retail store (https://barbaraoneill.com), and various merchandise products, including without limitation clothing, headwear, bags, and stickers (the "**Business**").

(Dkt. 1, Verif. Compl., Exh. A, to the Complaint)(emphasis in original).

The alleged "Assignment Agreement" defines or describes the "Assignment" as follows:

> 2. Assignment. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably assigns to Assignee, and Assignee hereby accepts, all of Assignor's right, title, and interest in and to the following for the Business arising and accruing under the laws of the United States, Canada, and Mexico (the "**Assigned IP**"): (a) all existing and future copyrights, whether registered or unregistered, and exclusive copyright licenses; (b) all trademarks and service marks, including without limitation the trademark and service mark BARBARA O'NEILL (collectively referred hereafter as, the "**Trademarks**"), together with the goodwill of the business connected with the use of, and symbolized by, the Trademarks; (c) all rights of any kind whatsoever of Assignor accruing under any of the foregoing provided by applicable law of the United States, Canada, and Mexico; (d) all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; and (e) all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the Effective Date, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, violation, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

Dkt. 1, Verif. Compl., Exh. A)(emphasis in original).

On February 26, 2025, Defendant Emma Loberg executed an Intellectual Property Assignment Agreement between her companies Defendant Misty Mountain USA LLC as assignor and Defendant BarabaraOneill.com LLC as assignee, signing herself for both companies as "owner" of each. (Dkt. 1, Verif. Compl. ¶ 20); Dkt. 1, Verif. Compl., Exh. B, Second Assignment Agreement).

This Second Assignment Agreement included all the rights in the First Assignment Agreement in dispute and more. (Dkt. 1, Verif. Compl. ¶ 21; Dkt 1, Verif. Compl., Exh. B). For example, this Second Assignment Agreement also included "all internet domain name registrations (including 'barbaraoneill.com' and social media account or user names incorporating any of the Trademarks or any acronym, abbreviation, or component thereof, and all associated web addresses, URLs, websites and web pages (including without limitation the Barbara O'Neill Website) and social media sites and pages, and all content and date thereon or relating thereto." (Dkt. 1, Verif. Compl. ¶ 21; Dkt. 1, Verif. Compl, Exh. B, ¶ "2.(e)).

On February 28, 2025, Defendant BarbaraOneill.com LLC filed U.S. trademark application serial no. 99061418 with the United States Patent and Trademark Office for the mark "BARBARA O'NEILL" for "Retail store services featuring books, body care products, natural herbal supplements, mineral

supplements, plant care products, stickers, clothing, headwear, and all-purpose carrying bags." (Dkt. 1, Verif. Compl. ¶ 22; Exh. 8, p.2, U.S. Trademark Appln 99061418). That application claimed the mark was first used for these services in May 2024 and had been first used in interstate commerce in May 2024. (Dkt. 1, Verif. Compl. ¶ 22; Exh. 8, p.2, U.S. Trademark Appln99061418) (The specimen of use of the mark provided with the application comprised screenshots from the website transferred in the Second Assignment Agreement of two days earlier-- *https://barbaraoneill.com*. Dkt. 1, Verif. Compl. ¶ 22; Exh. 8, pp. 9-12, U.S. Trademark Appln 99061418). A generic permission form was attached wherein Barbara O'Neill gave permission for a trademark registration of her name, dated July 16, 2024. (Dkt. 1, Verif. Compl. ¶ 22; Exh. 8, p. 7, U.S. Trademark Appln 99061418.)

Barbara O'Neill signed this generic permission form, provided to her by Defendant Loberg, on July 16, 2024, after Defendant Loberg had advised her that a trademark registration for "Barbara O'Neill" would help in removing counterfeit products and books from the marketplace. (Dkt. 1, Verif. Compl. ¶ 23; Exh. 2, Stmt of B. O'Neill, ¶ 1). Barbara O'Neill had at that time asked Defendant Loberg to go ahead and obtain the registration, with the understanding that Defendant Loberg would name Barbara O'Neill as the owner of the registration. (Dkt. 1,

Verif. Compl. ¶ 23; Exh. 2, Stmt of B. O'Neill, ¶5. Defendant Loberg not only did not name Barbara O'Neill as the owner of the trademark, she waited to file the registration application until after she had obtained the First Assignment Agreement. (Dkt. 1, Verif. Compl. ¶ 23; compare Exh. 8 with Verif. Compl, Exh A).

On April 7, 2025, Defendant Loberg recorded the First Assignment Agreement with the United States Copyright Office, indicating alleged assignment of the copyrights in three books allegedly from Plaintiff Barbara O'Neill to Defendant Misty Mountain USA LLC. In that filing, those three books were said by Defendant Loberg to be "Self Heal by Design;" "Sustain Me" and "A Taste of Misty Mountain." (Dkt. 1, Verif. Compl. ¶ 24; Exh. 9, Rec. of Copyright Assign.).

Barbara O'Neill has only authored two books: "Self Heal by Design. The Role of Micro-Organisms for Health," and "Sustain Me. A Handbook of Natural Remedies. The 9 Foundational Pillars for Health." (Dkt. 1, Verif. Compl. ¶ 25; Exh. 1, Stmt of B. O'Neill).

On April 14, 2025, Defendant Loberg recorded for the book "Sustain Me A Handbook of Natural Remedies The 9 Foundational Pillars for Health," a "supplemental registration . . . to correct errors on the original registration" which she <u>incorrectly</u> asserted "were present at the time the original registration was

made" [on July 26, 2024]. Defendant Loberg stated further that Copyright Claimant had "Incorrect Information" and should be "Emma Magnolia Loberg" by transfer from the author Barbara Esther O'Neill as copyright claimant pursuant to a 'written agreement.'" Defendant Loberg further stated that, "The original registration also incorrectly identified Emma Magnolia Loberg as the copyright claimant but the author had not yet executed a written assignment at the time of the application. Therefore Barbara Esther O'Neill should have been listed as both author and copyright claimant for the work, with Barbara Ester O'Neill's address." (Dkt. 1, Verif. Compl. ¶ 26).

On April 21, 2025, Defendant Loberg recorded the Second Assignment Agreement with the United States Copyright Office, indicating assignment of copyrights in two books from Misty Mountain USA LLC to BarbaraONeill.com LLC. In that filing, those two books were said by Defendant Loberg to be "Sustain Me" and "A Taste of Misty Mountain." (Dkt. 1, Verif. Compl. ¶ 27); Exh. 9 (Rec. of Copyright Assignment).

Using the First Assignment Agreement as attempted leverage, and withholding about $1 million U.S. Dollars in monies she owes Plaintiffs for sales of books printed and distributed to her by Plaintiffs for her sale and profit (with Plaintiffs' permission at the time) prior to the First Assignment Agreement,

Defendant Loberg has pressed Plaintiff Michael O'Neill to enter into an agreement with her company BarbaraONeill.com LLC to share profits on books by Barbara O'Neill and Michael O'Neill, and acknowledge that BarbaraONeill.com LLC is the owner of "all rights and title in and to the Barbara O'Neill Assigned IP in the Territory," [defined as Canada, Mexico, and the United States of America and its territories]. (Dkt. 1, Verifi. Compl, ¶ 28 & Exh. D.) Plaintiff Michael O'Neill has refused to sign it. (Dkt. 1, Verif. Compl. ¶ 28).

Defendant Loberg has further pressed Plaintiff Michael O'Neill to enter into another agreement related to giving Plaintiffs limited rights to sell "books, body care products, natural herbal supplements, clothing, headwear, bags, stickers, education materials such as course books, DVDs, or other digital format" at "events" where Barbara O'Neil "appears to speak, engage with attendees, promote her brand, and sign books, whether ticketed or free to the public," with profit sharing and accounting to BarbaraONeill.com LLC. Dkt 1, Verif. Compl., ¶, 29 & Exh. E. Plaintiff Michael O'Neill has refused to sign it. (Dkt. 1,Verif. Compl.¶ 29).

To further press Plaintiffs to enter into a business relationship with BarbaraONeill.com LLC, Defendant Loberg has written to Michael O'Neill, incorrectly accusing him and Barbara O'Neill of allegedly not complying with immigration and tax laws and threatening him that if they "cannot come to a signed

agreement," she "will have no choice but to pursue legal action" "to protect herself, and her family and her business." (Dkt. 1, Verif. Compl.¶ 30).

Defendant Loberg has further reached out to third parties in an effort to interfere with Plaintiffs' business. . (Dkt. 1, Verif. Compl.¶ 31).

On information and belief, Defendant Loberg has contacted at least one printer of Barbara O'Neill's books and of Michael O'Neill's book advising of her claimed ownership of the copyrights in those books. (Dkt. 1, Verif. Compl.¶ 32).

On information and belief, Defendant Loberg has contacted at least one translator of Barbara O'Neill's books and of Michael O'Neill's book advising them of her claimed ownership of the copyrights in those books. . (Dkt. 1, Verif. Compl.¶ 33).

On information and belief, Defendant Loberg has contacted at least one vendor of products to Barbara O'Neill, advising them that Michael O'Neill is holding and controlling her mother, Barbara O'Neill, hostage, a slanderous remark interfering with the business of Plaintiffs. (Dkt. 1, Verif. Compl.¶ 34)

## ARGUMENT

Plaintiffs are entitled to a temporary restraining order and preliminary injunction because Plaintiffs satisfy their burden to demonstrate:

> (1) a substantial likelihood of success on the merits;
> (2) that irreparable injury will be suffered if the relief is not granted;
> (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and
> (4) that the entry of the relief would serve the public interest."

*Brecka v. Individuals,* 2024 U.S. Dist. LEXIS 52864 *4-5; 2024 WL 1178978 (S.D. Fla. 2024)(granting preliminary injunction where (1) Defendants were engaged in a false endorsement advertising campaign that deliberately and intentionally misappropriated Plaintiff's name, image, and likeness such that consumers were likely to be, and had been, misled and confused by Defendants' online marketing campaign to believe that Plaintiff was associated with Defendants, or otherwise that Plaintiff had endorsed Defendants' products; where (2) allowing Defendants to continue this illegal conduct would cause irreparable harm to Plaintiff by damaging his reputation and depriving Plaintiff of the good will attached to his name and persona; where (3) Defendants had no right to engage in their unauthorized and misappropriating activities; and where (4) enjoining the unauthorized use of Plaintiff's name, image and likeness served the public interest), quoting *Schiavo ex. Rel. Schnidler v. Schiavo,* 403 F.3d 1223, 1225-26 (11th Cir. 2005).

## I. Plaintiffs Are Substantially Likely to Succeed on the Merits Against Defendants' "Assignment" Agreement, the Execution of Which Defendant Loberg Fraudulently Induced and the Terms of Which are Unconscionable

"Unconscionability is a question of law. If a court finds a contract provision unconscionable, then it may void the contract, void the provision, or limit the application of the provision to avoid the unconscionable result." *Nafra Worldwide, LLC v. Home Depot U.S.A., Inc.,* 2013 U.S. Dist. LEXIS 201841 *17, 2013 WL 12098772 (N.D. Ga. 2013), citing O.C.G.A. § 11-2-302(1). In Georgia, "[a]n unconscionable contract is one such as no man in his senses, and not under a delusion[,] would make on the one hand, and as no honest and fair man would accept on the other." *Id.,* quoting *Hall v. Wingate,* 159 Ga. 630, 126 S.E. 796, 813 (Ga. 1924).

Wisconsin law, referenced as controlling in the Assignment Agreement, is similar. "Under Wisconsin law, an unconscionable contract exists when there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Fitzgerald v. Wells Fargo & Co.,* 2025 U.S. Dist. LEXIS 24207 6, 2025 WL 457980 (E.D. Wisc. 2025), quoting *Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co,*117 Wis. 2d 587, 345 N.W.2d 417, 424 (Wis. 1984); *Villalobos v. EZCorp, Inc.,* 2013 U.S. Dist. LEXIS 97998 *5, 2013 WL 3732875 (W.D. Wis. 2013). "'The underlying principle is one of prevention of oppression or unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.'"

*Villalobos,* quoting *Cottonwood Financial, Ltd. v. Estes,* 2010 WI App. 75, ¶4, 325 Wis. 2d 749, 784 N.W.2d 726 (Wis. Ap. 2010)(*reversed on other grounds.).*

The “Assignment Agreement” at Exhibit A to the Verified Complaint (Dkt.1) is unconscionable on its face. Not only was Plaintiff Barbara O’Neill unaware she was executing an agreement or the substance of its terms, and surprised to later learn she had signed an agreement, and not only did Defendant Loberg misstate and mislead Plaintiff Barbara O’Neill as to what she was doing when she “executed” the agreement, but the transfer of intellectual property provided in the agreement, on its face, is oppressively and egregiously one-sided in favor of Defendant Loberg and her company Defendant Misty Mountain USA, LLC. The Assignment Agreement’s overreaching and overly broad, vague, and unfair terms purport to transfer “all existing and future copyrights….” and “all trademark and service marks…” while failing to state any specific consideration therefor or any rights at all reserved to Barbara O’Neill for the transfer.

Plaintiffs are likely to succeed on the merits of invalidating the intellectual property transfer and the Assignment Agreement in its entirety.

## II. Plaintiffs Are Substantially Likely to Succeed on the Merits Against Defendants’ Retention of the Domain Name, *BarbaraO’Neill.com* and Use Likely to Cause Mistake as to Affiliation With or Approval of Barbara O’Neill in Violation of 15 U.S.C. § 1125

Defendants simply cannot use the domain name *BarbaraO'Neill.com* without causing confusion in the marketplace because of Plaintiff's prior association with that domain name and use of website and the fact that the domain name is Plaintiff Barbara O'Neill's own name.

Defendants maintain Defendant Loberg's prior association with Plaintiff Barbara O'Neill in numerous ways on the website itself. The home page screen pictures both Defendant Loberg and Plaintiff Barbara O'Neill and invites visitors with a "start shopping" button beneath the line, "Welcome to the curated store of Barbara O'Neill." The home page further has a link entitled "Barbara O'Neill" for purchase of a "Barbara "O'Neill book," or reservation for a retreat by Plaintiffs Barbara and Michael O'Neill in Australia. The home page also has a link that states "Our Story" and when that link is clicked, the page picturing Defendant Emma Loberg and Plaintiff Barbara O'Neill states:

A MOTHER AND DAUGHTER PROJECT
WELCOME TO OUR STORE

Barbaraoneill.com was founded by Barbara's daughter, Emma Magnolia. This website is a trusted source for purchasing Barbara's books, recommended products, and viewing Barbara O'Neill's content.

(Exh. 10. , Screenshots from barabaraoneill.com)

These references to Barbara O'Neill on the website and the associations with Barbara O'Neill on that website show Defendants' intent of misappropriating Plaintiff Barbara O'Neill's good will.

"The Lanham Act proscribes activities that are likely to cause confusion, mistake, or deception as to the association, sponsorship, or approval of goods or services of another." *Diller v. Barry Driller, Inc.,* 2012 U.S. Dist. LEXIS 133515 *7 (C.D. Cal. 2012), citing 15 U.S.C. § 1125(a). "That includes 'false endorsement,' which involves the 'unauthorized use of a celebrity's identity' that is 'likely to confuse customers as to the plaintiff's sponsorship or approval of the product.'" *Id.,* quoting *Wendt v. Host International, Inc.,* 125 F.3d 806, 812 (9th Cir. 1997).

In determining whether confusion is likely, the Eleventh Circuit typically looks to seven non-dispositive factors:

> "(1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public."

*Most Worshipful Nat'l Grand Lodge v. United Grand Lodge GA AF & AYM, Inc.,*

813 Fed. Appx. 455, 458-59 (11th Cir. 2020), quoting *Tana v. Dantanna's,* 611 F.3d. 767, 774-75 (11th Cir. 2010).

In addition to the sixth factor concerning intent in Defendants misappropriation discussed above, the other six factors also indicate likelihood of confusion by Defendants' use and control of the *barbaraoneill.com* domain name and website, especially because Plaintiff Barbara O'Neill was using the domain name and website until Defendants took exclusive control after February 3, 2025, and because the domain name is Plaintiff's personal name.

Plaintiff Barbara O'Neill's name is well recognized. She has nearly 2.5 million followers, for example, on Instagram. (Exh. 11., Screenshots from Instagram pages) Defendant Loberg, in contrast, has less than 60 thousand. (Exh. 11., Screenshots from Instagram pages) The recognizability of Plaintiff Barbara O'Neill's name results in the strength of the name as a trademark when it is used as a trademark—to promote goods or services. And that promotion is exactly what Defendants are doing with the name on the *"barbaraoneill.com"* website. Defendants sell Barbara O'Neill's books on their website, as well as Defendant Misty Mountain USA LLC products, leveraging off of the association with Barbara O'Neill.

The second through fifth "similarity" factors are inevitably indicative of a likelihood of confusion caused by Defendants' control of the domain name and website. Defendants confiscated the existing website that was being used by Plaintiff Barbara O'Neill, (which Barbara O'Neill thought that she owned), and continued its general appearance and content. (Exh. 10., Screenshots from barabaraoneill.com)

Defendants' ability to control the website, indicates that Defendant Loberg registered the domain name in her own name (while earlier purporting to be registering it for Barbara O'Neill).

Plaintiffs are thus likely to succeed on the merits of their Lanham Act claim.

## III. Plaintiff Barbara O'Neill is Likely to Succeed on the Merits of Her Claim of Defendants' Misappropriation of her Name and Likeness in Violation of her Common Law Right of Publicity.

Defendants' use of the *barbaraoneill.com* domain name and website to associate with and "trade off" of Plaintiff's Barbara O'Neill's reputation is a violation of her right of publicity. The Eleventh Circuit has stated that, "'Georgia recognizes a right of publicity to protect against the appropriation of another's name and likeness . . . without consent and for the financial gain of the appropriator . . . whether the person whose name and likeness used is a private citizen, entertainer, or . . . a public figure who is not a public official.'" *Toffoloni*

*v. LFB Publishing Group,* 572 F.3d 1201, 1239 (11th Cir. 2009), quoting *Martin Luther King, Jr. Ctr for Soc. Change, Inc. v. American Heritage Prods., Inc.,* 250 Ga. 1335, 296 S.E.2d 697, 703 (Ga. 1982). "The right of publicity may be defined as [an individual's] right to the exclusive use of his or her name and likeness," and violation is a state tort. *Id.* at 700, 703.

The evidence of Defendants' acts complained of in the complaint and cited in the Statement of Facts demonstrate that Defendants purposefully committed those acts to use Plaintiff Barbara O'Neill's name to advertise and sell Defendants' products and services, without Plaintiff Barbara O'Neill's consent. Those acts have created a significant risk of injury to Plaintiff Barbara O'Neill's goodwill and reputation. There is a high risk that customers will believe that Defendants' products and services were sponsored by Plaintiff Barbara O'Neill.

## IV. Plaintiffs Will Suffer Actual Irreparable Harm If Relief is Not Granted

Defendants have taken from Plaintiffs their ability to control the value of Plaintiff Barbara O'Neill's name, by associating that name with a service offered by Defendants that directly competes with Plaintiffs, a service that Plaintiffs support directly. That is, both parties offer and sell Barbara O'Neill books and health related products.

Defendants' control of the domain name and website Plaintiff Barbara O'Neill used, syphons off customers that think they are still doing business and contacting Barbara O'Neill when they are not. Consumers will likely confuse Defendants' services and products with Plaintiff's sponsorship and may therefore use Defendants' services or buy Defendants' products instead of Plaintiffs,' believing those services or products are supported by Plaintiffs. Further, such confusion risks that those customers may not receive the products and services or the quality of products or services they would have received from Plaintiffs. See *Diller,* 2012 U.S. Dist. LEXIS 133515 at * 25-26.

By losing control of her domain name, her website, her copyrights in her books and her rights in her trademarks, through Defendant Loberg's egregious conduct and misrepresentations, Plaintiff Barbara O'Neill has lost control of her reputation—of the impression the public has of her when contacting the website controlled by Defendants or when buying and reading the books printed under the control of Defendants. This creates a significant risk of irreparable harm to all of the Plaintiffs' reputations and goodwill if a customer becomes dissatisfied with any of Defendants' products or services, but aims that dissatisfaction toward Plaintiffs instead of toward Defendants. *Id.*

At this stage, the Court may reasonably infer likelihood of irreparable harm in order to justify a temporary restraining order and preliminary injunction, especially since Defendants have not only not ceased their infringing conduct, but have escalated their infringing conduct since February 3, 2025. See *Diller,* 2012 U.S. Dist. LEXIS 133515 at * 25-26, citing *Seed Services, Inc. v. Winsor Grain, Inc.,* 868 F. Supp. 2d 998 (E.D. Cal. Apr. 12, 2012).

## V. The Balance of Hardships Tips Sharply in Plaintiffs' Favor and Entry of Relief to Plaintiffs Serves Public Interest

Defendants are intentionally capitalizing on Plaintiff Barbara O'Neill's name to divert to themselves customers who were intending to patronize Plaintiffs, all at the expense of Plaintiff Barbara O'Neill's good will and reputation. Further, Defendants, by confiscating Plaintiff Barbara O'Neill's copyrights and trademarks, through a fraudulent Assignment Agreement, and exclusively controlling Barbara O'Neill's namesake domain name and website, Defendants are intending to cannibalize Barbara O'Neill's work and goodwill attached to her name and persona.

Any inconvenience to Defendants will be purely economic. Further, the injunction Plaintiffs seek does not prevent Defendants from doing business with their own products that are not associated with Plaintiff Barbara O'Neill. "It is no

hardship to cease intentionally infringing someone else's trademark rights." *Diller,* 2012 U.S. Dist. LEXIS at * 77.

Because Defendants have no right to engage in their unauthorized and misappropriating activities, the balance of harms strongly favors Plaintiffs. *Brecka,* 2024 U.S. Dist. LEXIS at * 8.

For these reasons as well, enjoining Defendants' conduct serves the public interest, particularly Defendants' unauthorized use of Plaintiff Barbara O'Neill's name, image and likeness, and their taking and exercise of control over her copyrights and trademarks. *Id.*

## VI. The Court Should Waive the Bond Requirement Because Plaintiffs Seek Only to Protect Plaintiff Barbara O'Neill's Intellectual Property and Rights of Privacy

The amount of security for a bond under Fed. R. Civ. P. 65 is within the Court's discretion, meaning a Court may waive the bond requirement. *Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 628 (5th Cir. 1996). As noted above, "It is no hardship to cease intentionally infringing someone else's trademark rights." *Diller,* 2012 U.S. Dist. LEXIS at * 77. And this position is applicable as well to stopping infringement of someone else's copyrights and rights of publicity. *See id.*

## CONCLUSION

For all these reasons, Plaintiffs ask that the Court grant their motion for a temporary restraining order and a preliminary injunction.

Dated: July 1, 2025

Respectfully submitted,

*/s/David E. Oles*

David E. Oles, Sr.
Attorney for Plaintiffs
Georgia Bar No. 551544
5755 Northpoint Parkway
Suite 25
Alpharetta, GA 30022
(770) 753-9995
firm@deoleslaw.com

/s/*Karen B. Tripp*

Karen B. Tripp
Attorney at Law
Texas State Bar No.: 03420850
4264 San Felipe, Suite 1100
Houston, TX 77027
(713) 658-9323 office phone.
(832)798-7576 cell phone
*ktripp@tripplaw.com*
*tripp.karen@gmail.com*
**Attorney for Plaintiffs**,
SHBD, LLC, Barbara O'Neill,
and Michael O'Neill

Motion for Admission *Pro Hac Vice* is being submitted

**CERTIFICATE OF REASONABLE EFFORTS TO GIVE NOTICE OF TRO AND OF CONFERENCE**

Under Fed. R. Civ. P. 65(b)(1)(B), I certify that on July 2, 2025, counsel sent a copy of Plaintiffs' verified complaint by email to Derek Staub (dstaub@fbt.com), counsel for Defendants, Emma Loberg, MISTY MOUNTAIN USA, LLC, and BARBARAONEILL.COM, LLC. She informed Mr. Staub of Plaintiffs' intent to file a temporary restraining order and preliminary injunction motion on July 2, 2025, and asked if Defendants had a position on Plaintiffs' motion. Mr. Staub has not provided a position.

Immediately after the filing Plaintiffs' TRO and preliminary injunction motion, a copy of the motion, supporting brief, and proposed order was issued to Mr. Staub by email. Plaintiffs are also making efforts to personally serve each Defendant with process and a copy of Plaintiffs' motion, brief, and proposed order.

/s/David E. Oles
Attorney for Plaintiffs

/s/Karen Tripp
Attorney for Plaintiffs
(pro hac vice application being filed)