IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| SHBD, LLC, BARBARA O'NEILL, and MICHAEL O'NEILL, | § § § § § § § | |
| *Plaintiffs/Counterclaim Defendants,* | | |
| v. | § § | No. 4:25-CV-00183-WMR |
| EMMA M. LOBERG, MISTY MOUNTAIN USA LLC, and BARABRAONEILL.COM LLC, | § § § § § § § | |
| *Defendants/Counterclaim Plaintiffs.* | | |

**DEFENDANTS' ANSWER TO
PLAINTIFFS' FIRST AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 12, Defendants Emma M. Loberg, Misty Mountain USA LLC, and BarbaraONeill.com LLC (collectively, "**Defendants**"), through their counsel of record, hereby submit the following answers, affirmative defenses and counterclaims to Plaintiffs' First Amended Complaint. Defendants deny each and every allegation contained in the First Amended Complaint except as expressly admitted herein. Any reference to the First Amended Complaint's headings, titles, or introductory paragraphs is made solely for

1

organizational clarity and does not constitute an admission or denial of any factual or legal assertions contained therein.

## ANSWER

Defendants respond to the individually numbered paragraphs of the First Amended Complaint as follows:

1.     Defendants admit that Plaintiffs SHBD, LLC, Barbara O'Neill, and Michael O'Neill (collectively, "**Plaintiffs**") purport to assert causes of action against Defendants. Except as expressly admitted, denied.

## NATURE OF THE ACTION

2.     Defendants admit that Plaintiffs purport to bring an action for the recovery of certain copyrights, trademarks and the domain name *barbaraoneill.com* and violations of rights of publicity and privacy. Except as expressly admitted, denied.

## THE PARTIES

3.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the same.

4.     Defendants admit that Plaintiff Barbara O'Neill is an individual and an Australian citizen, that she has written books entitled *Self Heal by Design, The Role of Micro-Organisms for Health* and *Sustain Me, A Handbook of Natural Remedies,*

2

*The 9 Foundational Pillars for Health,*[1] and that she is the mother of Defendant Emma M. Loberg ("**Defendant Emma Loberg**"). Defendants further admit that Plaintiff Barbara O'Neill was in Ringgold, Georgia in February 2025. Defendants lack knowledge or information sufficient to form a belief regarding the remainder of Paragraph 4 and therefore deny the same.

5.    Defendants admit that Plaintiff Michael O'Neill is an individual and an Australian citizen, that he is married to Plaintiff Barbara O'Neill, and that he authored a book titled *The Assassination of Barbara O'Neill.*[2] Defendants lack knowledge or information sufficient to form a belief regarding the balance of Paragraph 5 and therefore deny the same.

6.    Defendants admit that Defendant Emma Loberg resides at 257 230th Street, Baldwin, Wisconsin 54002 and is the daughter of Plaintiff Barbara O'Neill. Defendants further admit that Defendant Emma Loberg owns or controls Defendants Misty Mountain USA LLC and BarbaraONeill.com LLC and handles the distribution of the Barbara O'Neill Books in the United States. Except as expressly admitted, denied.

---

[1] The books *Self Heal by Design, The Role of Micro-Organisms for Health*, *Sustain Me* and *A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* are collectively referred to herein as the "**Barbara O'Neill Books**."

[2] The book entitled *The Assassination of Barbara O'Neill* shall be referred to herein as the "**Michael O'Neill Book**."

3

7.    Defendants admit that Defendant Misty Mountain USA LLC is a Wisconsin limited liability company that was organized on June 30, 2023, and its principal place of business is located at 257 230th Street, Baldwin, Wisconsin 54002. Defendants further admit that Defendant Misty Mountain USA LLC's registered agent is Douglas M. Loberg, who is the husband of Defendant Emma Loberg. Except as expressly admitted, denied.

8.    Defendants admit that Defendant BarbaraONeill.com LLC is a Wisconsin limited liability company that was organized on February 13, 2025, and its principal place of business is 257 230th Street, Baldwin, Wisconsin 54002. Defendants further admit that Defendant BarbaraONeill.com LLC's registered agent is Defendant Emma Loberg. Except as expressly admitted, denied.

## JURSIDICTION AND VENUE

9.    This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that federal courts have subject matter jurisdiction over claims properly brought pursuant to 17 U.S.C. § 101 et seq and 28 U.S.C. § § 2201, 1331 and 1338(a), but deny that there is any factual or legal basis to support the claims asserted by Plaintiffs. Except as expressly admitted, denied.

10.    This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that federal courts

have supplemental jurisdiction over state law claims properly brought pursuant to 28 U.S.C. § 1367, but deny that there is any factual or legal basis to support the claims asserted by Plaintiffs. Except as expressly admitted, denied.

11.     This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that complete diversity of citizenship exists between Plaintiffs and Defendants and that the amount in controversy exceeds $75,000, exclusive of interest and costs, but deny that there is any factual or legal basis to support the claims asserted by Plaintiffs. Except as expressly admitted, denied.

12.     Defendants deny that the Court may exercise personal jurisdiction over Defendants Emma Loberg or Misty Mountain USA LLC. Defendants specifically deny that Defendant Emma Loberg "obtained, fraudulently, surreptitiously, and under false pretense" an electronic signature from Plaintiff Barbara O'Neill while in Ringgold, Georgia, or that any such alleged activity confers jurisdiction under Georgia's long-arm statute. Defendants admit that a copy of the Intellectual Property Assignment Agreement executed by the parties on February 3, 2025, is attached to the First Amended Complaint as Exhibit A (referred to herein as the "**First Assignment Agreement**"). Except as expressly admitted, denied.

13.     Defendants deny that the Court may exercise personal jurisdiction over Defendant BarbaraONeill.com LLC. Defendants further deny that any transfer of

intellectual property rights to Defendant BarbaraONeill.com LLC establishes purposeful availment of the forum such that due process requirements are satisfied. Defendants admit that a copy of the Intellectual Property Assignment Agreement executed by Defendant Misty Mountain USA LLC and Defendant BarbaraONeill.com LLC on February 26, 2025, is attached to the First Amended Complaint as Exhibit B (referred to herein as the "**Second Assignment Agreement**"). Except as expressly admitted, denied.

14.    Denied.

## FACTS

15.    Defendants admit that Plaintiff Barbara O'Neill was in Ringgold, Georgia on or about February 3, 2025, to speak at a conference and that Defendant Emma Loberg had discussed visiting her mother, Plaintiff Barbara O'Neill, while she was in Georgia. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph and therefore deny the same.

16.    Defendants admit that Defendant Emma Loberg traveled to Georgia and then accompanied her mother, Plaintiff Barbara O'Neill to Ringgold, Georgia. Except as expressly admitted, denied.

17.    Denied.

18.    Denied.

19.   Defendants admit that on February 5, 2025, Plaintiff Michael O'Neill virtually met with Defendant Emma Loberg and her counsel, Derek Staub, via a Microsoft Teams Call. Defendants further admit that, during that meeting, Defendant Emma Loberg stated that Plaintiff Barbara O'Neill signed the First Assignment Agreement with her biometric signature. Defendants admit that the First Assignment Agreement is attached as Exhibit A to the First Amended Complaint. Except as expressly admitted, denied.

20.   Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff Barbara O'Neill was "surprised" and therefore deny the same. Except as expressly admitted, denied.

21.   Defendants admit that the Second Assignment Agreement was executed on February 26, 2025, between Defendant Misty Mountain USA LLC and Defendant BarbaraONeill.com LLC. Defendants further admit that Defendant Emma Loberg signed the document on behalf of both companies in her corporate capacity as owner of each company. Defendants further admit that the Second Assignment Agreement is attached as Exhibit B to the First Amended Complaint. Except as expressly admitted, denied.

22.   Defendants admit that the Second Assignment Agreement assigned "all internet domain name registrations" including "*barbaraoneill.com*" and "social media account or usernames incorporating any of the Trademarks or any acronym,

abbreviation, or component thereof, and all associated web addresses, URLs, websites and webpages (including without limitation the Barbara O'Neill Website) and social media sites and pages, and all content and data thereon or relating thereto." Except as expressly admitted, denied.

23. Defendants admit that on February 28, 2025, Defendant BarbaraONeill.com LLC filed U.S. Trademark Application Serial No. 99061418 for the mark BARBARA O'NEILL covering "Retail store services featuring books, body care products, natural herbal supplements, mineral supplements, gardening products, plant care products, stickers, clothing, headwear, and all-purpose carrying bags." Defendants admit that the application claimed the mark was used "at least as early" May 2024 and contained specimens. Defendants further admit that "consistent with requirements of the United States Patent and Trademark Office for registration of the name of a living person as a trademark," the application included a document entitled "Consent of Living Individual" executed by Plaintiff Barbara O'Neill on July 16, 2024, which is attached to the First Amended Complaint as Exhibit C (the "**Consent Form**"). Except as expressly admitted, denied.

24. Defendants admit that on July 16, 2024, Plaintiff Barbara O'Neill signed the Consent Form. Except as expressly admitted, denied.

8

25.     Defendants admit that the First Assignment Agreement was recorded with the United States Copyright Office on April 7, 2025. Except as expressly admitted, denied.

26.     Defendants admit that Plaintiff Barbara O'Neill has written books entitled *Self Heal by Design, The Role of Micro-Organisms for Health* and *Sustain Me, A Handbook of Natural Remedies, The 9 Foundational Pillars for Health*. Except as expressly admitted, denied.

27.     Defendants admit that on April 14, 2025, a supplementary copyright registration was filed for the book entitled *Sustain Me: A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* to correct errors on the original registration which were present at the time the original registration was made. Except as expressly admitted, denied.

28.     Defendants admit that on April 21, 2025, Defendant Emma Loberg, through counsel, recorded the Second Assignment Agreement with the United States Copyright Office for the book *Sustain Me: A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* and for *A Taste of Misty Mountain*. Except as expressly admitted, denied.

29.     Defendants admit that Defendant Emma Loberg presented Plaintiff Michael O'Neill with a proposed Profit Sharing Agreement which is attached to the First Amended Complaint as Exhibit D (the "**Profit Sharing Agreement**").

Defendants further admit that Plaintiff Michael O'Neill did not sign the Profit Sharing Agreement. Except as expressly admitted, denied.

30.    Defendants admit that Defendant Emma Loberg presented Plaintiff Michael O'Neill with an Event Sales Agreement which is attached to the First Amended Complaint as Exhibit E (the "**Events Agreement**"). Defendants further admit that Plaintiff Michael O'Neill did not sign the Events Agreement. Except as expressly admitted, denied.

31.    Defendants admit that Defendant Emma Loberg expressed concerns to Plaintiff Michael O'Neill regarding immigration and tax compliance and that, absent a written agreement, she may have to pursue legal action to protect herself and her business. Except as expressly admitted, denied.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Denied.

## **CLAIM ONE**

### **Declaratory Judgment of Invalidity / Unenforceability of Transfer of Intellectual Property Rights**

36.    Paragraph 36 merely incorporates by reference Plaintiffs' preceding allegations in the First Amended Complaint and therefore requires no separate response. To the extent a response is deemed necessary, Defendants deny the

allegations incorporated into Paragraph 36 except to the extent expressly admitted in Defendants' answers to Paragraphs 1–35 above.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

49.    This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, denied.

50.    Denied.

51.    Denied.

52.    Denied.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Denied.

57.    Defendant Emma Loberg admits that Plaintiff Barbara O'Neill was not given a copy of any audio/visual recording of the electronic execution and notarization. Except as otherwise admitted, denied.

58.    Denied.

59.    Denied.

## CLAIM TWO

**Violation of 15 U.S.C. § 1125 False Designations of Origin, False Descriptions, Misleading Representations of Fact Likely to Cause Mistake as to Affiliation with or Approval by Barbara O'Neill**

60.    Paragraph 60 merely incorporates by reference Plaintiffs' preceding allegations in the First Amended Complaint and therefore requires no separate response. To the extent a response is deemed necessary, Defendants deny the allegations incorporated into Paragraph 60 except to the extent expressly admitted in Defendants' answers to Paragraphs 1–59 above.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

12

65. Denied.

66. Denied.

67. Denied.

68. Denied.

## CLAIM THREE

### Misappropriation of Name and Likeness and Violation of the Right of Publicity of Barbara O'Neill Under Georgia Common Law

69. Paragraph 69 merely incorporates by reference Plaintiffs' preceding allegations in the First Amended Complaint and therefore requires no separate response. To the extent a response is deemed necessary, Defendants deny the allegations incorporated into Paragraph 69 except to the extent expressly admitted in Defendants' answers to Paragraphs 1–68 above.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

## CLAIM FOUR

### Trover or Conversion – O.C.G.A. § 9-10-201

76.   Paragraph 76 merely incorporates by reference Plaintiffs' preceding allegations in the First Amended Complaint and therefore requires no separate response. To the extent a response is deemed necessary, Defendants deny the allegations incorporated into Paragraph 76 except to the extent expressly admitted in Defendants' answers to Paragraphs 1–75 above.

77.   Defendants admit that Plaintiffs permitted Defendants to resell the Barbara O'Neill Books and the Michael O'Neill Book. Defendants further admit that, with Plaintiff Barbara O'Neill's knowledge and permission, Defendant Emma Loberg established the website *barbaraoneill.com* for the purpose of selling the Barbara O'Neill Books and the Michael O'Neill Book and other merchandise and advertising upcoming speaking engagements by Plaintiff Barbara O'Neill. Except as expressly admitted, denied.

78.   Denied.

79.   Denied.

80.   Denied.

81.   Denied.

82.   Denied.

## CLAIM FIVE

**Collection of Outstanding Debt—Payment Withheld in Bad Faith**

83. Paragraph 83 merely incorporates by reference Plaintiffs' preceding allegations in the First Amended Complaint and therefore requires no separate response. To the extent a response is deemed necessary, Defendants deny the allegations incorporated into Paragraph 83 except to the extent expressly admitted in Defendants' answers to Paragraphs 1–82 above.

84. Defendants admit that Plaintiffs issued two invoices dated March 2025 and April 2025, copies of which are attached to the First Amended Complaint as Exhibit F, but deny that any amount is presently due and owing or that Defendants acted in bad faith in connection with those invoices. Except as expressly admitted, denied.

85. Denied.

86. Denied.

87. Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any of the relief requested in their Prayer for Relief, or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Defendants allege and assert the following enumerated defenses in response to the allegations in the First Amended Complaint, undertaking the burden of proof only as to those defenses which are deemed affirmative by law. Defendants reserve

15

the right to amend these defenses as the result of information learned through additional investigation and discovery.

### *First Affirmative Defense*
### *(Failure to State a Claim)*

1.  Even taking the First Amended Complaint's well-pleaded allegations as true, Plaintiffs have not pleaded facts that, if proven, would establish every element of any asserted cause of action. Each claim therefore fails under Rule 12(b)(6).

### *Second Affirmative Defense*
### *(Prior License and Consent)*

2.  Plaintiffs Barbara and Michael O'Neill orally granted Defendants an express, exclusive license to market, print, and sell the Barbara O'Neill Books and the Michael O'Neill Book and to operate under the BARBARA O'NEILL brand and sell BARBARA O'NEILL branded merchandise. This oral agreement was later reduced to writing for the Barbara O'Neill Books. All complained-of acts were performed with that license or with Plaintiff Barbara O'Neill's signed written consent; Plaintiffs are estopped from denying the authorization they gave.

### *Third Affirmative Defense*
### *(Ratification, Waiver, and Estoppel)*

3.  For more than a year, Plaintiffs accepted more than $1.23 million dollars in royalties, publicly praised Defendants' marketing, and encouraged

16

continued sales. By accepting the benefits of the license, Plaintiffs ratified and waived any objection to Defendants' conduct and are equitably estopped from asserting the claims now pleaded.

### Fourth Affirmative Defense
### (Unclean Hands)

4.      Plaintiffs formed Plaintiff SHBD, LLC, filed a competing trademark application, and launched a rival website that copies without permission Defendants' content verbatim while sending cease-and-desist letters rife with misstatements. This inequitable conduct precludes the equitable relief Plaintiffs seek.

### Fifth Affirmative Defense
### (No Likelihood of Confusion)

5.      Defendants' continuous, authorized use of the BARBARA O'NEILL mark predates any conflicting use by Plaintiffs', and Defendants' branding, channels of trade, and disclaimers eliminate any realistic probability of consumer confusion or deception.

### Sixth Affirmative Defense
### (Fair Use and Nominative Fair Use)

6.      To the extent Defendants use the name BARBARA O'NEILL solely to identify Plaintiff Barbara O'Neill as the author of the works or the speaker at a lecture, that use constitutes (i) *descriptive fair use* under 15 U.S.C. § 1115(b)(4) and (ii) *nominative fair use* under controlling case law.

17

### Seventh Affirmative Defense
### (Copyright Preemption)

7.      To the extent Plaintiffs' state-law misappropriation claim is based solely on Defendants' alleged copying or distribution of Plaintiff Barbara O'Neill's fixed written works, that claim is preempted by 17 U.S.C. § 301. Plaintiffs' separate theories that hinge on consumer confusion or on the use of Plaintiff Barbara O'Neill's name and likeness are not subject to § 301 preemption.

### Eighth Affirmative Defense
### (Failure to Mitigate)

8.      Plaintiffs failed to take reasonable steps to avoid or lessen their alleged damages and cannot recover any amount that could have been mitigated through ordinary diligence.

### Nineth Affirmative Defense
### (Lack of Irreparable Harm)

9.      Because Plaintiffs Barbara and Michael O'Neill licensed the Defendants' uses they now attack and continued to accept royalties from Defendants, any injury they allege would be compensable by money damages if proven, defeating the prerequisite for injunctive relief.

### Tenth Affirmative Defense
### (First Amendment / Descriptive Commentary)

10.    To the extent Defendants' online content includes commentary about Plaintiff Barbara O'Neill's health philosophies or public lectures, that speech is protected by the First Amendment and not actionable under trademark or publicity rights theories.

### Eleventh Affirmative Defense
### (No Willful or Bad-Faith Conduct)

11.    Defendants at all times acted in good faith and with reasonable reliance on written and oral authorizations from Plaintiffs; any statutory enhancement of damages or attorneys' fees is therefore unavailable.

### Twelfth Affirmative Defense
### (Personal Jurisdiction and Venue)

12.    Defendants lack minimum contacts with Georgia such that exercise of personal jurisdiction over them in this civil action by the Court would be improper; in the alternative, venue is more convenient in the Western District of Wisconsin. Defendants therefore preserve all objections under Rules 12(b)(2) and 12(b)(3).

### *Thirteenth Affirmative Defense*
### *(Comparative Fault / Third-Party Conduct)*

13.    If Plaintiffs suffered any injury (all liability being denied by Defendants), such injury resulted in whole or in part from their own actions or from third parties over whom Defendants exercised no control.

Discovery is in its infancy; Defendants reserve the right to assert additional defenses that become apparent as facts develop.

## JURY DEMAND

Defendants demand a jury trial pursuant to Fed. R. Civ. P. 38 on all issues so triable.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Defendants for their counterclaims, state the following:

### PARTIES, JURISDICTION AND VENUE

1.     Counterclaim Plaintiff Emma Loberg is an individual residing at 257 230th Street, Baldwin, Wisconsin 54002, and is a citizen of Baldwin, Wisconsin.

2.     Counterclaim Plaintiff Misty Mountain USA LLC is a Wisconsin limited-liability company organized with its principal place of business located at 257 230th Street, Baldwin, Wisconsin 54002.

3.     Counterclaim Plaintiff BarbaraONeill.com LLC is a Wisconsin limited-liability company with its principal place of business located at 257 230th Street, Baldwin, Wisconsin 54002.

4.     Upon information and belief, Counterclaim Defendant SHBD, LLC is a Wyoming limited liability company and has a principal place of business at 30 N. Gould St., Suite N, Sheridan, Wyoming 82801.

5.     Counterclaim Defendant Barbara O'Neill is an individual residing in Australia and is a citizen of Australia.

6.     Upon information and belief, Plaintiff Michael O'Neill is an individual who has residency in Dubai and is a residing citizen of Australia.

21

7.     The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§1331, 1332, 1338(a), 2201, and 2202, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. §1367.

8.     The Court has personal jurisdiction over Plaintiffs at least because Plaintiffs have availed themselves of the Court by filing the First Amended Complaint against Defendants in the Court.

## BACKGROUND

9.     Since 2015, Counterclaim Plaintiff Emma Loberg has managed the family's U.S. distribution of her mother Counterclaim Defendant Barbara O'Neill's books in Baldwin, Wisconsin (i.e., the Barbara O'Neill Books[3]).

10.     Counterclaim Plaintiff Emma Loberg received pallets of the Barbara O'Neill Books at her residence in Baldwin, Wisconsin.

11.     Counterclaim Plaintiff Emma Loberg boxed and packaged the Barbara O'Neill Books in her home and forwarded the cases of books to Amazon to replenish warehouse inventory as needed.

12.     Around 2020, Counterclaim Defendant Michael O'Neill wrote his book entitled *The Assassination of Barbara O'Neill* (the "**Michael O'Neill Book**").

---

[3] The books *Self Heal by Design*, *The Role of Micro-Organisms for Health*, *Sustain Me* and *A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* are collectively referred to herein as the "**Barbara O'Neill Books**."

22

Counterclaim Plaintiff Emma Loberg managed distribution of this book in the same manner as the Barbara O'Neill Books.

13. In the early years, Counterclaim Plaintiff Emma Loberg shipped approximately six to eight cases of the Barbara O'Neill Books to Amazon every few months.

14. By early 2023, demand for the Barbara O'Neill Books spiked.

15. On three separate occasions in 2023, a two-month supply of the Barbara O'Neill Books sold out overnight.

16. In response to this demand, Counterclaim Plaintiff Emma Loberg shipped Amazon twenty cases of Barbara O'Neill Books.

17. Amazon lost this twenty-case shipment.

18. In response, Counterclaim Plaintiff Emma Loberg and Counterclaim Defendants Barbara O'Neill and Michael O'Neill agreed that a dedicated direct-to-consumer e-commerce storefront was necessary to guarantee reliable fulfillment of client orders.

19. Defendants Barbara O'Neill and Michael O'Neill agreed that Counterclaim Plaintiff Emma Loberg would build and operate this digital storefront from Wisconsin.

20. In exchange, Counterclaim Defendants Barbara O'Neill and Michael O'Neill orally granted Counterclaim Plaintiff Emma Loberg the exclusive right to

print, market, and sell the Barbara O'Neill Books and the Michael O'Neill Book around the world.

21. Counterclaim Defendants Barbara O'Neill and Michael O'Neill also agreed that Counterclaim Plaintiff Emma Loberg would be the sole source of BARBARA O'NEILL branded merchandise.

22. Counterclaim Defendants Barbara O'Neill and Michael O'Neill did not require Counterclaim Plaintiff Emma Loberg to share any portion of the profits from the BARBARA O'NEILL branded merchandise.

23. On May 22, 2023, Counterclaim Plaintiff Emma Loberg launched the website *MistyMountainUSA.com*, secured payment processing, and began offering for sale the Barbara O'Neill Books and the Michael O'Neill Book together with herbal teas, skin-care creams, and other wellness products.

24. On June 30, 2023, Counterclaim Plaintiff Emma Loberg organized Counterclaim Plaintiff Misty Mountain USA LLC.

25. In January 2024, Counterclaim Plaintiff Emma Loberg approached Counterclaim Defendant Michael O'Neill about purchasing the domain name *barbaraoneill.com* to unify branding.

26. Counterclaim Defendant Michael O'Neill agreed that Counterclaim Plaintiffs could purchase the domain name, and on March 13, 2024, Counterclaim

Plaintiff Emma Loberg purchased the domain name through GoDaddy's aftermarket auction for $10,000.

27.    In May 2024, Counterclaim Plaintiff Emma Loberg relaunched the consolidated website using the *barbaraoneill.com* domain name.

28.    On July 16, 2024, Counterclaim Defendant Barbara O'Neill executed the consent form attached to the First Amended Complaint as Exhibit C.

29.    Counterclaim Plaintiffs effectively became a small publishing house.

30.    Counterclaim Plaintiffs financed almost every single print run of the Barbara O'Neill Books and the Michael O'Neill Book.

31.    Counterclaim Plaintiffs stored all merchandise, including the Barbara O'Neill Books and the Michael O'Neill Book, absorbed fulfillment costs and managed marketing of the Barbara O'Neill Books and the Michael O'Neill Book and merchandise.

32.    Between October 2023 and early 2025, Counterclaim Plaintiffs wired Counterclaim Defendants Barbara and Michael O'Neill, at least, $1,230,004.65 in royalties from the proceeds made from sales of the Barbara O'Neill Books and the Michael O'Neill Book.

33.    Counterclaim Defendants Barbara and Michael O'Neill accepted these royalty payments without protest.

25

34. On February 3, 2025, Counterclaim Defendant Barbara O'Neill executed the Intellectual Property Assignment Agreement attached to the First Amended Complaint at Exhibit A (the "**First Assignment Agreement**") before a notary present via Zoom.

35. In the First Assignment Agreement, Counterclaim Defendant Barbara O'Neill expressly conveyed all copyrights, trademarks, and publicity rights in the United States, Canada and Mexico (the "**North American Market**") to Counterclaim Plaintiff Misty Mountain USA LLC.

36. These rights were subsequently transferred to Counterclaim Plaintiff BarbaraONeill.com LLC via the Intellectual Property Assignment Agreement executed by Defendant Misty Mountain USA LLC and Defendant BarbaraONeill.com LLC on February 26, 2025, attached to the First Amended Complaint as Exhibit B (the "**Second Assignment Agreement**").

37. Counterclaim Defendant Barbara O'Neill understood the terms of the First Assignment Agreement before executing it.

38. Prior to executing the First Assignment Agreement, Counterclaim Plaintiff Emma Loberg explained what the document was and that it was needed to formalize the family's 2023 oral agreement.

39. Counterclaim Defendant Barbara O'Neill voluntarily executed the First Assignment Agreement in front of a notary.

40.     On February 28, 2025, Counterclaim Plaintiff BarbaraONeill.com LLC filed U.S. Trademark Application Serial No. 99061418 for the mark BARBARA O'NEILL which included the consent form attached to the First Amended Complaint as Exhibit C.

41.     Counterclaim Plaintiff Emma Loberg, through counsel, filed Supplemental Registration No. TX0009492014 for U.S. Copyright Registration No. TX0009412670 (2024) (i.e., the copyright registration for the *Sustain Me A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* book) to correct errors on Copyright Registration No. TX0009412670 that were present at the time such registration was made so that the chain of title for the book would be correctly recorded with the United States Copyright Office.

42.     In Supplemental Registration No. TX0009492014, Counterclaim Plaintiff Emma Loberg, through counsel, stated the name of the author in U.S. Copyright Registration No. TX0009412670 mistakenly used quotation marks in the last name "O'Neill" instead of an apostrophe, and it incorrectly identified Emma Magnolia Loberg as the copyright claimant because the author, Barbara O'Neill, had not yet executed a written assignment of right in the *Sustain Me A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* book at the time of the application for registration. Accordingly, Supplemental Registration No. TX0009492014 was filed to correctly identify Barbara Esther O'Neill as both the

author and claimant of the work, with Barbara Esther O'Neill's address for the claimant. Additionally, Counterclaim Plaintiff Emma Loberg, through counsel, stated U.S. Copyright Registration No. TX0009412670 incorrectly excluded pre-existing text as this was in reference to the work's various citations, which under the U.S. Copyright Office's registration guidelines, does not need to be excluded. Accordingly, Supplemental Registration No. TX0009492014 was filed to correct this error and not exclude any pre-existing material.

43.    Counterclaim    Plaintiffs    Misty    Mountain    USA    LLC    and BarbaraONeill.com LLC also recorded a copyright for the book *Self Heal by Design, The Role of Micro-Organisms for Health*, under U.S. Copyright Registration No. TX0009481197 (2025).

44.    Meanwhile, unbeknownst to Counterclaim Plaintiff Emma Loberg, Counterclaim Defendant Michael O'Neill and Barbara O'Neill formed their own company Counterclaim Defendant SHBD, LLC on October 9, 2024.

45.    On or about February 4, 2025, Counterclaim Defendants employee Ricky Davis, emailed Counterclaim Plaintiffs' printer, Modern Press, and directed that a shipment of 25,000 Barbara O'Neill Books be redirected to Counterclaim Defendant SHBD, LLC's warehouse in Cleburne, Texas.

46.    Modern Press contacted Counterclaim Plaintiffs regarding Ricky Davis's email and the shipment was ultimately shipped to Counterclaim Plaintiffs.

47. On February 5, 2025, Counterclaim Defendant Michael O'Neill met with Counterclaim Plaintiff Emma Loberg and her lawyer, Derek Staub, via Microsoft Teams in which the First Assignment Agreement was discussed.

48. Counterclaim Plaintiff Barbara O'Neill, who signed the First Assignment Agreement, was not present at this meeting to discuss that agreement.

49. On or about February 21, 2025, Counterclaim Defendants created their own website at the domain name, *officialbarbaraoneill.com*.

50. On March 13, 2025, Counterclaim Defendant Michael O'Neill, or upon information and belief his employee, Ricky Davis, via Counterclaim Defendant SHBD, LLC, filed a copycat BARBARA O'NEILL trademark application with the United States Patent and Trademark Office under Trademark Application Serial No. 99082554 in contravention of the First Assignment Agreement.

51. On information and belief, since forming Counterclaim Defendant SHBD, LLC, Counterclaim Defendants have established a distribution center in Texas for the printing and distribution of the Barbara O'Neill Books and the Michael O'Neill Book, as well as other merchandise in contravention of the First Assignment Agreement.

52. On July 29, 2025, after Counterclaim Defendants filed this civil action, the Court heard Counterclaim Defendants argument for a temporary restraining

order against Counterclaim Plaintiffs ("**TRO**"), which the Court subsequently denied.

53.     Less than 24 hours after the Court denied the TRO, Counterclaim Defendants Barbara and Michael O'Neill posted a video to Facebook.

54.     In this video, Counterclaim Defendants Barbara and Michael O'Neill alluded that the website at *barbaraoneill.com* was not authorized by Counterclaim Defendants Barbara O'Neill and Michael O'Neill.

55.     The video further instructed customers and fans to only use the *officialbarbaraoneill.com* website and should "definitely not" use the *barbaraoneill.com* website.

56.     Upon information and belief, Counterclaim Defendants control *officialbarbaraoneill.com*.

57.     Shortly after posting the video on Facebook, a user by the name "Winnie de Bonham" commented "It must be tough to announce it again bcos (sic) she's your daughter" to which Counterclaim Defendant Barbara O'Neill responded with a broken heart emoji and a prayer hands emoji.

58.     Counterclaim Defendant Barbara O'Neill also commented on one of her Facebook posts noting that it is "reassuring to see that more people are recognising (sic) the scams and rampant exploitation and turning to the one and only

safe and official website: www.officialbarbaraoneill.com. Thank you for standing with Barbara in truth and integrity."

59.     The *officialbarbaraoneill.com* web site has a section labeled "USA Shop" where customers can purchase the Barbara O'Neill Books, the Michael O'Neill Book, herbal remedies (labeled as "coming soon"), "hormones", food, skin and hair care, and other merchandise.

## <u>COUNT I</u>

*Unfair Competition and False Designation of Origin and False Advertising*
*(Lanham Act § 43(a), 15 U.S.C. § 1125(a)(1)(A) & (B))*

60.     Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

61.     Counterclaim Plaintiff Emma Loberg has managed the family's U.S. distribution of the Barbara O'Neill Books since 2015 and the Michael O'Neill Book since 2020 from her home in Baldwin, Wisconsin. She organized all printing, warehousing, and fulfillment, shipped inventory to Amazon, and later built and operated a dedicated direct-to-consumer storefront. She did all of this with Counterclaim Defendants Barbara and Michael O'Neill's consent.

62.     In 2023, Counterclaim Defendants Barbara and Michael O'Neill orally granted Counterclaim Plaintiff Emma Loberg the exclusive right to print, market,

and sell the Barbara O'Neill Books and the Michael O'Neill Book and BARBARA O'NEILL branded merchandise and other products worldwide.

63. Since at least May 2023, Counterclaim Plaintiffs have continuously used the BARBARA O'NEILL mark in interstate commerce to market, produce and sell the Barbara O'Neill Books and the Michael O'Neill Book and related merchandise. This use has been exclusive, open, notorious and authorized by the Counterclaim Defendants, generating significant goodwill and customer recognition.

64. Since at least May 2024, Counterclaim Plaintiffs have continuously used the BARBARA O'NEILL mark together with the *barbaraoneill.com* domain in interstate commerce to market, produce and sell the Barbara O'Neill Books and the Michael O'Neill Book and related merchandise. This use has been exclusive, open, notorious and authorized by the Counterclaim Defendants, generating significant goodwill and customer recognition.

65. Beginning in March 2025, after the First Assignment Agreement was executed, Counterclaim Defendants, with full knowledge of Counterclaim Plaintiffs' prior use and exclusive rights, launched a confusingly similar commercial presence by: (a) filing a rival BARBARA O'NEILL trademark application; (b) publishing a mirror website that duplicated Counterclaim Plaintiffs' web site product descriptions, images, and customer reviews verbatim; (c) attempting to re-route

32

inventory ordered and paid for by Counterclaim Plaintiffs to a Texas warehouse under Counterclaim Defendants' control; and (d) issuing press releases, social media posts and cease-and-desist letters falsely asserting that Counterclaim Plaintiffs are scams and operating without authorization and that the website at *barbaraoneill.com* is not the correct website to purchase the Barbara O'Neill Books and the Michael O'Neill Book.

66.    These statements are false and misleading. In fact, every book sold in worldwide since, at least, 2015 has been printed, bound, shipped, and royalty-reported by Counterclaim Plaintiff Emma Loberg, with the consent and participation of Counterclaim Defendants. Counterclaim Defendants accepted more than $1.23 million in royalties without objection before making the contrary statements they now make.

67.    Counterclaim Defendants disseminated these false and misleading statements in commercial advertising or promotion, including Facebook videos and other social media posts that reached tens of thousands of consumers (one post exceeding 21,000 views and another exceeding 36,000 views).

68.    Counterclaim Defendants' unlawful conduct has deceived, and is likely to continue to deceive, a substantial segment of the consumers to whom Counterclaim Defendants have directed their marketing activities.

69. The false statements were material, in that they were likely to influence purchasing decisions by leading consumers to buy products from Counterclaim Defendants rather than from Counterclaim Plaintiffs.

70. Counterclaim Defendants' unlawful conduct is likely to, and has already, caused confusion, mistake, and deception as to the affiliation, connection, or association of Counterclaim Plaintiffs with Counterclaim Defendants, and as to the origin, sponsorship, and approval of the parties' respective goods and services.

71. Counterclaim Defendants made these false and misleading statements knowingly or with reckless disregard for their truth, and with the intent to cause confusion, divert customers, and usurp the goodwill Counterclaim Plaintiffs had built.

72. Counterclaim Defendants' conduct constitutes unfair competition and false designation of origin under 15 U.S.C. § 1125(a)(1)(A), and false or misleading description of fact under § 1125(a)(1)(B).

73. Counterclaim Plaintiffs have suffered—and, absent relief, will continue to suffer—irreparable harm to their reputation, customer relationships, and goodwill for which there is no adequate remedy at law.

74. Accordingly, Counterclaim Plaintiffs are entitled to preliminary and permanent injunctive relief: (a) enjoining Counterclaim Defendants and all those in concert with them from using the BARBARA O'NEILL mark or any confusingly

similar designation in the North American Market; (b) enjoining Counterclaim Defendants from representing, directly or by implication, that Counterclaim Plaintiffs lack authorization to market Counterclaim Defendant Barbara O'Neill's works in the North American Market; (c) compelling Counterclaim Defendants to issue corrective statements to vendors, printers, and the public clarifying Counterclaim Plaintiffs' exclusive rights in the North America Market; and (d) ordering Counterclaim Defendants to remove or revise any online content falsely labeling Counterclaim Plaintiffs' website a "scam."

75.   Counterclaim Defendants' misconduct is deliberate, intentional, malicious, and in bad faith. Counterclaim Defendants should be ordered to account for and disgorge their profits from their misconduct, in an amount to be determined at trial. Further, given Counterclaim Defendants' deception and bad faith, this case should be deemed exceptional and Counterclaim Plaintiffs should be awarded, in addition to actual damages, exemplary damages, punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II

*Cybersquatting (ACPA, 15 U.S.C. § 1125(d))*

76.   Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

35

77. On March 13, 2024, Counterclaim Plaintiff Emma Loberg lawfully purchased the domain name *barbaraoneill.com* through GoDaddy's aftermarket auction after confirming with Counterclaim Defendant Michael O'Neill that the purchase was prudent and consistent with her exclusive rights.

78. On May 11, 2024, Counterclaim Plaintiffs relaunched the family's consolidated website using the *barbaraoneill.com* domain. From that date forward, Counterclaim Plaintiffs continuously used the *barbaraoneill.com* domain in bona fide commerce to market and sell the Barbara O'Neill Books and the Michael O'Neill Book and associated merchandise, with Counterclaim Defendants' knowledge and consent.

79. Counterclaim Defendant Barbara O'Neill promoted the use of the *BarbaraONeill.com* website at her public speaking events as the official website to purchase her books.

80. Counterclaim Plaintiffs invested significant resources in operating the *barbaraoneill.com* site, funding print runs, fulfillment, and marketing, and thereby generated significant goodwill, steady traffic, and broad consumer recognition under the domain name.

81. On October 9, 2024, Counterclaim Defendant Michael O'Neill, or on information and belief Counterclaim Defendants' employee, Ricky Davis, secretly formed SHBD, LLC. On March 13, 2025, a competing BARBARA O'NEILL

trademark application was filed in its name, and shortly thereafter, Counterclaim Defendants began promoting a rival website at *officialbarbaraoneill.com*, intended to divert customers away from the *barbaraoneill.com* site.

82.     At the time they began their malicious diversion campaign, pursuant to the First Assignment Agreement, Counterclaim Defendants had no legitimate trademark rights or interest in the *barbaraoneill.com* domain. To the contrary, they had expressly approved its purchase and accepted more than $1.23 million in royalties from Counterclaim Plaintiffs without objection.

83.     Counterclaim Defendants engaged in the above conduct with a bad-faith intent to profit from the goodwill already associated with the *barbaraoneill.com* domain, as demonstrated by multiple statutory indicia under 15 U.S.C. § 1125(d)(1)(B): (a) Counterclaim Defendants possessed no trademark registration or prior legitimate use of the BARBARA O'NEILL mark before 2025; (b) Counterclaim Plaintiffs' earlier and continuous use of *barbaraoneill.com* established its web site as the recognized storefront; (c) Counterclaim Defendants created a rival website with a confusingly similar domain and duplicative content; (d) Counterclaim Defendants offered to "resolve" their trademark challenge only if Counterclaim Plaintiffs surrendered both the *barbaraoneill.com* domain and the U.S. inventory that Counterclaim Defendants had previously tried to divert; (e) Counterclaim Defendants submitted false declarations under oath to the USPTO claiming

37

exclusive rights that they knew belonged to Counterclaim Plaintiffs and (f) Counterclaim Defendants made public statements falsely asserting that the *barbaraoneill.com* site was "unauthorized.".

84.    Counterclaim Defendants' conduct has caused and will continue to cause irreparable harm to Counterclaim Plaintiffs, including loss of control over Counterclaim Plaintiffs' principal online storefront, substantial loss of sales revenue, damage to search-engine rankings, and erosion of customer trust. Monetary damages alone are inadequate to redress these harms.

85.    Pursuant to 15 U.S.C. § 1125(d)(1)(C) and § 1117(d), Counterclaim Plaintiffs are entitled to: (a) transfer of any confusingly similar domain names registered   or   promoted   by   Counterclaim   Defendants,   including *officialbarbaraoneill.com*; (b) statutory damages of up to $100,000 per domain name for willful cybersquatting; (c) actual damages and Counterclaim Defendants' profits, to be proven at trial; and (d) reasonable attorneys' fees and costs because Counterclaim Defendants' conduct was willful, exceptional and in bad faith.

## COUNT III

*Tortious Interference with Contractual and Prospective Business Relations*
*(Wisconsin Common Law or, in the alternative, Georgia Common Law)*

86.    Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

87.     Counterclaim Plaintiffs maintain binding commercial agreements with (a) Modern Press and (b) Sheridan Books. Each contract depends on uninterrupted use of the *barbaraoneill.com* storefront, ISBN data, and inventory flow.

88.     Counterclaim Plaintiffs also have ongoing and prospective business relationships with distributors, retailers, and individual customers, which depend on the Plaintiffs' exclusive right in to the Barbara O'Neill Books, the Michael O'Neill Book and related merchandise.

89.     Counterclaim Defendants were fully aware of all such contracts and negotiations: Counterclaim Defendant Michael O'Neill was sent inventory reports and sales data, sent royalty payments, was included in conversations regarding domain acquisitions, and had knowledge of Plaintiffs' agreements with Modern Press and other partners

90.     Beginning in March 2025, Counterclaim Defendants intentionally and without legal justification or privilege engaged in acts designed to disrupt these relationships, including (a) posting videos on social media falsely asserting that the *barbaraoneill.com* site was unauthorized; (b) launching a competing website at *officialbarbaraoneill.com*, directing customers away from the *barbaraoneill.com* site; (c) attempting to divert inventory ordered and paid for by Plaintiffs to a Texas warehouse under Defendants' control; and (d) issuing press releases, cease-and-desist letters, and other communications misrepresenting Counterclaim Plaintiffs'

39

rights and authorization to sell the Barbara O'Neill Books and the Michael O'Neill Book.

91.   Counterclaim Defendants' actions were intentional, with knowledge of Plaintiffs' contractual rights, and undertaken for the purpose of causing Plaintiffs' contracts and prospective business relationships to fail or be disrupted, satisfying the "improper motive" element under Wisconsin law (or, in the alternative, Georgia law).

92.   As a direct and proximate result of Counterclaim Defendants' conduct, Counterclaim Plaintiffs have suffered: (a) lost profits; (b) damage to their business reputation and goodwill; and (c) continuing and irreparable harm.

93.   Counterclaim Defendants' conduct was willful, malicious, and in bad faith.

94.   Counterclaim Plaintiffs are therefore entitled to (a) compensatory damages in an amount to be proven at trial, (b) punitive damages under Wis. Stat. § 895.043 (or, in the alternative, O.C.G.A. § 51-12-5.1), (c) injunctive relief barring Counterclaim Defendants from further interference with Counterclaim Plaintiffs' relationships with customers, prospective customers, vendors and distributors, and prospective vendors and distributors, and (d) costs and reasonable attorneys' fees.

## COUNT IV

*Defamation per se*
*(Wisconsin common law, or, in the alternative, O.C.G.A. §§ 51-5-1 and 51-5-4)*

95. Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

96. Between March 2025 and late July 2025, Counterclaim Defendants knowingly published and disseminated false statements (both written and oral) about Counterclaim Plaintiffs to third parties and the general public. These statements included, but were not limited to, that: (a) the *barbaraoneill.com* site was not an authorized site to purchase Barbara O'Neill Books, the Michael O'Neill Book, and related merchandise; (b) Counterclaim Plaintiffs website is a scam, and they are selling unauthorized books and merchandise; and (c) Counterclaim Plaintiffs were exploiting the Counterclaim Defendants' name or intellectual property without authorization.

97. These false statements (both written and oral) were disseminated publicly through social media posts on Facebook and Instagram, including posts and videos with views exceeding 21,000 and 36,000, respectively.

98. The statements are categorically false. At all relevant times, Counterclaim Defendants were aware of: (a) the parties' oral agreement granting Counterclaim Plaintiff Emma Loberg the exclusive right to print, market, and sell the Barbara O'Neill Books and the Michael O'Neill Book, (b) the First Assignment

41

Agreement; (c) written royalty statements confirming payments to Counterclaim Defendants totaling over $1.23 million; and (d) Counterclaim Defendant Michael O'Neill's WhatsApp messages and other communications acknowledging Counterclaim Plaintiff Emma Loberg's exclusive right to market the Barbara O'Neill Books and the Michael O'Neill Book and associated merchandise.

99.    Counterclaim Defendants acted with actual knowledge of the falsity of these statements, or, at a minimum, with reckless disregard for the truth.

100.    Under Wisconsin law and, alternatively, Georgia law, falsely accusing a business of piracy, fraud, or professional misconduct constitutes defamation per se, eliminating the requirement to plead special damages.

101.    As a direct and proximate result of these false statements, Counterclaim Plaintiffs have suffered, and will continue to suffer: (a) harm to their reputation and business goodwill; (b) lost sales and customer confusion; (c) presumed damages and, where applicable, special damages; and (d) continuing irreparable harm that cannot be fully remedied by monetary damages alone.

102.    Counterclaim Plaintiffs are entitled to presumed and actual damages, special damages, punitive damages under Wis. Stat. § 895.043 (or, in the alternative, under O.C.G.A. § 51-12-5.1), a public retraction and corrective statement distributed through the same channels as the defamatory statements, equitable relief, including

court-ordered removal or correction of defamatory content; and costs and reasonable attorneys' fees.

## COUNT V

*Civil Conspiracy*
*(Wisconsin common law, or, in the alternative, Georgia common law)*

103. Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

104. Upon information and belief, Counterclaim Defendants Barbara O'Neill, Michael O'Neill, SHBD, LLC, and non-party Ricky Davis agreed, explicitly or tacitly, to a common plan or combination to (a) divert Counterclaim Plaintiffs' customers and interfere with their contracts, (b) discredit Counterclaim Plaintiffs' website at *barbaraoneill.com*, by falsely labeling it a "scam", (c) file a competing trademark application to claim rights in the BARBARA O'NEILL brand, and (d) seize control of the BARBARA O'NEILL brand in North America Market.

105. In furtherance of this agreement, one or more co-conspirators committed overt acts constituting torts, including but not limited to: (a) the false advertising, unfair competition, and misrepresentation detailed in Count I; (b) the cybersquatting actions detailed in Count II; (c) the defamation per se acts detailed in Count III; and (d) the tortious interference with contractual and prospective business relations detailed in Count IV.

43

106.   Counterclaim Defendants acted knowingly, intentionally, and with the specific purpose of accomplishing the unlawful plan by unlawful means, demonstrating a mutual understanding to achieve their common unlawful objective.

107.   As a direct and proximate result of the conspiracy and the overt tortious acts committed in furtherance of it, Counterclaim Plaintiffs suffered economic losses, damage to reputation, loss of customers, interference with contracts, and other injuries as alleged in at least Counts I, II, IV, V, and VIII.

108.   All conspirators are jointly and severally liable for the full measure of damages and equitable relief sought in the underlying counts, including compensatory and punitive damages, injunctive relief, and attorneys' fees.

## COUNT VI

*Unjust Enrichment / Quantum Meruit*
*(Wisconsin common law, or, in the alternative, Georgia common law)*

109.   Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

110.   Since March 2025, Counterclaim Defendants have operated at *officialbarbaraoneill.com*, a website that duplicates not only Counterclaim Plaintiffs' product descriptions but also the distinctive trade dress, packaging methods, and customer experience developed and financed exclusively by Counterclaim Plaintiffs. This includes duplicative branded stickers, wrapping

44

instructions, and "made with love" packaging. Counterclaim Plaintiff Emma Loberg has used and maintained this trade dress exclusively and continuously in the market since 2023.

111. Counterclaim Defendants copying, coupled with public statements falsely asserting that the *barbaraoneill.com* site is a "scam," has diverted search-engine traffic, customer attention, and sales away from Counterclaim Plaintiffs to Counterclaim Defendants' website. Every Barbara O'Neill Book sold in the North America Market since 2015 was printed, bound, wrapped, and shipped at Counterclaim Plaintiff Emma Loberg's expense. Counterclaim Defendants contributed no capital, labor or resources to this business, yet they now collect revenue from the misdirected consumer base.

112. Counterclaim Plaintiff Emma Loberg thus conferred substantial, non-gratuitous benefits on Counterclaim Defendants including, (a) a fully developed and professionally branded e-commerce concept with a nationwide fulfillment infrastructure and (b) goodwill of an established customer base that now generates six-figure monthly sales. Counterclaim Defendants knowingly and voluntarily accepted those benefits, in fact, they copied them wholesale, without reimbursing Counterclaim Plaintiff Emma Loberg's investment or sharing profits.

113. Retention of these benefits by Counterclaim Defendants without payment would be inequitable. Equity and principles of unjust enrichment require

that Counterclaim Defendants disgorge all associated revenues derived from sales from March 2025 onward, as well as any additional sums derived from exploiting Counterclaim Plaintiffs' customer relationships, trade dress, or marketing infrastructure.

114. Accordingly, Counterclaim Plaintiffs are entitled to (a) a full accounting of Counterclaim Defendants' revenues, (b) restitution or disgorgement of all revenues and profits unjustly retained, (c) pre- and post-judgment interest as permitted by law, and (d) costs and reasonable attorneys' fees as permitted by law.

## COUNT VII

*Promissory / Equitable Estoppel*
*(Wisconsin common law, or, in the alternative, Georgia common law)*

115. Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

116. In May 2023, Counterclaim Defendants Barbara and Michael O'Neill promised Counterclaim Plaintiff Emma Loberg that she would have exclusive rights to print, market, and sell the Barbara O'Neill Books and the Michael O'Neill Book and related merchandise, and to use the BARBARA O'NEILL name and brand, if she supplied the capital and operational know-how needed to professionalize distribution.

46

117.    Counterclaim Plaintiff Emma Loberg reasonably and foreseeably relied on that promise by investing more than hundreds of thousands of dollars in print runs, warehousing, domain acquisition, and advertising, and by wiring resulting sales royalties to Counterclaim Defendants Barbara and Michael O'Neill.

118.    Counterclaim Defendants accepted the benefits of Counterclaim Plaintiff Emma Loberg's reliance for over a year and then attempted to repudiate the promise once business became lucrative.

119.    Injustice can be avoided only by enforcing the promise—that is, by recognizing Counterclaim Plaintiffs' exclusive rights and precluding Counterclaim Defendants from reclaiming them.

120.    Counterclaim Plaintiffs therefore seek equitable enforcement of the promise or, in the alternative, reliance damages sufficient to restore them to the position they occupied before the promise was made.

## COUNT VIII

*Deceptive Trade Practices*
*(Wis. Stat. §100.18 or, in the alternative, O.C.G.A. §10-1-370)*

121.    Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

122.    Since launching the site at *barbaraoneill.com* in May 2024, Counterclaim Plaintiffs have lawfully operated as the exclusive distributor of the

47

Barbara O'Neill Books and the Michael O'Neill Book and related merchandise pursuant to oral and written agreements with Counterclaim Defendants Barbara and Michael O'Neill.

123. Beginning in March 2025, Counterclaim Defendants published false and misleading statements of fact in press releases, social media posts, videos, and other communications to the public, including that the web site at *barbaraoneill.com* is a "scam" and alluding that they sell counterfeit books.

124. These statements were disseminated broadly to the public, including via social media videos with tens of thousands of views, with the intent to induce members of the public not to purchase the Barbara O'Neill Books and the Michael O'Neill Book from Counterclaim Plaintiffs and instead to direct sales to Counterclaim Defendants' competing website at *officialbarbaraoneill.com*.

125. The statements were untrue, deceptive, and misleading. In particular, Counterclaim Plaintiffs operated with the authorization and consent of Counterclaim Defendants Michael and Barbara O'Neill, had valid assignment agreements, and were the sole source of legitimate Barbara O'Neill Books, the Michael O'Neill Book and merchandise.

126. As a direct and proximate result of Counterclaim Defendants' false representations, Counterclaim Plaintiffs suffered pecuniary losses, including but not limited to lost sales, canceled vendor orders, reduced website traffic, diminished

Amazon orders, and the diversion of customers to Counterclaim Defendants' competing storefront.

127. Counterclaim Defendants' misconduct also damaged Counterclaim Plaintiffs' business reputation and goodwill associated with the BARBARA O'NEILL brand and *barbaraoneill.com*.

128. By reason of Counterclaim Defendants' false and misleading advertising, Counterclaim Plaintiffs are entitled to recover pecuniary losses, costs, and reasonable attorneys' fees under Wis. Stat. § 100.18.

129. In the alternative, Counterclaim Defendants' actions constitute unfair and deceptive trade practices in violation of O.C.G.A. § 10-1-370 *et seq*.

130. The wrongful actions alleged herein have caused, and are likely to continue to cause, confusion and misunderstanding as to the affiliation, connection, association, source, sponsorship, approval, and authenticity of Counterclaim Plaintiffs' goods and services. Counterclaim Defendants' actions also falsely represent that Counterclaim Plaintiffs lack the approval, status, and authenticity that they in fact possess, and that their goods are counterfeit when they are genuine. Further, Counterclaim Defendants have made false and misleading representations of fact disparaging Counterclaim Plaintiffs' website and their lawful sale of the Barbara O'Neill Books and the Michael O'Neill Book. Such statements create an overall likelihood of confusion or misunderstanding regarding the origin, quality,

49

sponsorship, approval, and authenticity of Counterclaim Plaintiffs' goods and services.

131. By reason of Counterclaim Defendants' actions, Counterclaim Plaintiffs have suffered, and will suffer, damage to their business reputation and the goodwill associated with the BARBARA O'NEILL brand and *barbaraoneill.com*.

132. Counterclaim Defendants' false advertising, as explained herein, was deliberate, intentional, malicious, and in bad faith. Counterclaim Defendants should be ordered to account for and disgorge their profits from their misconduct, in an amount to be determined at trial.

133. Further, Counterclaim Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Counterclaim Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Counterclaim Defendants' actions. Hence, Counterclaim Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Counterclaim Defendants from continuing their use of the BARBARA O'NEILL mark or any confusingly similar designation in the market, as well as an injunction (a) enjoining Counterclaim Defendants from representing, directly or by implication, that Counterclaim Plaintiffs lack authorization to market Barbara O'Neill's Books and related merchandise; (b) compelling Counterclaim Defendants to issue corrective statements to vendors, printers, and the public clarifying Counterclaim Plaintiffs exclusive rights; and (c)

50

ordering Counterclaim Defendants to remove or revise any online content falsely labeling Counterclaim Plaintiffs' website a "scam" and similar misstatements.

## COUNT IX

*Trademark Fraud*
*(Wis. Stat. §132.02 or, in the alternative, O.C.G.A. §23-2-55)*

134.  Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

135.  Counterclaim Plaintiffs are the lawful owners of the BARBARA O'NEILL mark by virtue of written assignment agreements and continuous exclusive commercial use in commerce.

136.  Counterclaim Defendants had actual knowledge of Counterclaim Plaintiffs' ownership of and right in the BARBARA O'NEILL mark in the North America market prior to Counterclaim Defendants' creation of a competing U.S. distribution center and prior to publishing false statements, including the statement the site at *barbaraoneill.com* is a scam and sells counterfeit copies of the Barbara O'Neill Books and the Michael O'Neill Book, in press releases, social media posts and videos, and cease-and-desist letters.

137.  Despite this knowledge, Counterclaim Defendants knowingly filed a competing application with the U.S. Patent and Trademark Office for the BARBARA O'NEILL mark (Serial No. 99082554), and in doing so falsely

represented themselves as the rightful owners of the mark in the United States. Counterclaim Defendants also created a copycat website at *officialbarbaraoneill.com*.

138. Such conduct constitutes trademark fraud and infringement under Wisconsin law because Counterclaim Defendants knowingly used and attempted to register a confusingly similar imitation of the BARBARA O'NEILL mark and opened a confusingly similar website with the intent to deceive and defraud the public and divert trade from Counterclaim Plaintiffs.

139. Alternatively, such conduct constitutes deceptive trade practices under Georgia law because Counterclaim Defendants knowingly made false representations of material fact regarding ownership and authenticity of the BARBARA O'NEILL mark and goods sold on the site at *barbaraoneill.com* and created similar trademarks, names, or devices, with the intent to deceive and mislead both the public and commercial partners and encroach upon the business of Counterclaim Plaintiffs in violation of O.C.G.A. § 23-2-55.

140. Counterclaim Defendants' wrongful acts were deliberate, willful, and in bad faith.

141. As a direct and proximate result of Counterclaim Defendants' fraudulent conduct, Counterclaim Plaintiffs have suffered damage to goodwill, loss of customers, and irreparable injury to the value of the BARBARA O'NEILL mark.

142. Counterclaim Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Counterclaim Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Counterclaim Defendants' actions. Hence, Counterclaim Plaintiffs are entitled to a preliminary and permanent injunction prohibiting Counterclaim Defendants from continuing their violations of law to Counterclaim Plaintiffs' detriment.

## COUNT X

*Common Law Unfair Competition*

143. Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

144. Counterclaim Defendants' actions alleged herein have caused and are likely to continue to cause, confusion among potential and existing customers of Counterclaim Plaintiffs as to whether Counterclaim Plaintiffs' products are authentic and/or are authorized the Barbara O'Neill Books and the Michael O'Neill Book.

145. These and additional actions of Counterclaim Defendants complained of herein constitute unfair competition under the common law of Wisconsin, or, in the alternative, Georgia.

146. Counterclaim Defendants wrongful actions, as explained herein, are deliberate, intentional, malicious, and in bad faith. Counterclaim Defendants should

be ordered to account for and disgorge their profits from their misconduct, in an amount to be determined at trial. Further, given Counterclaim Defendants' deception and bad faith, this case should be deemed exceptional and Counterclaim Plaintiffs should be awarded, in addition to actual damages, exemplary damages, punitive damages, costs, and attorneys' fees under applicable Wisconsin law, or, in the alternative, Georgia law.

147.   Counterclaim Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Counterclaim Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Counterclaim Defendants actions. Hence, Counterclaim Plaintiffs are entitled to a preliminary and permanent injunction under Wisconsin law, or, in the alternative, Georgia law, prohibiting Counterclaim Defendants from continuing their misconduct to Counterclaim Plaintiffs' detriment.

## COUNT XI

*Common Law Trademark Infringement*

148.   Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

149.   As alleged more fully herein, Counterclaim Defendants are using the BARBARA O'NEILL mark without license or permission from Counterclaim

Plaintiffs and despite Counterclaim Defendants having previously assigned Counterclaim Plaintiffs all the rights to use the mark.

150. Counterclaim Defendants' unauthorized use and application to register the BARBARA O'NEILL mark and unauthorized sales and promotion of associated products to unsuspecting consumers in Wisconsin and Georgia is an infringement of Counterclaim Plaintiffs' Wisconsin, or, in the alternative, Georgia common law trademark rights.

151. As explained in more detail above, Counterclaim Defendants' actions have created a substantial likelihood of confusion and caused mistake and deception in consumers' minds.

152. Counterclaim Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Counterclaim Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by Counterclaim Defendants' actions. Hence, Counterclaim Plaintiffs are entitled to a preliminary and permanent injunction, prohibiting Counterclaim Defendants from using the BARBARA O'NEILL mark or any mark confusingly similar thereto, in connection with their business, pursuant to Wisconsin common law, or, in the alternative, Georgia common law.

153. Counterclaim Defendants conduct in infringing the BARBARA O'NEILL mark, as explained herein, is deliberate, intentional, malicious, and in bad

faith. Counterclaim Defendants' should be ordered to account for and disgorge their profits from their misconduct, in an amount to be determined at trial. Further, given Counterclaim Defendants' deception and bad faith, this case should be deemed exceptional and Counterclaim Plaintiffs should be awarded, in addition to actual damages, exemplary damages, punitive damages, costs, and attorneys' fees pursuant to Wisconsin common law, or, in the alternative, Georgia common law.

## COUNT XII

*Copyright Infringement*
*(17 U.S.C. § 501)*

154.   Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

155.   Counterclaim Plaintiffs are the owners of valid, federally registered copyrights in the literary works authored by Counterclaim Defendant Barbara O'Neill entitled *Sustain Me, A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* (U.S. Copyright Registration No. TX0009412670 (2024)) and *Self Heal by Design, The Role of Micro-Organisms for Health* (U.S. Copyright Registration No. TX0009481197 (2025)) (the "**Copyrighted Works**").

156.   Pursuant to the First Assignment Agreement executed by Counterclaim Defendant Barbara O'Neill on February 3, 2025, all copyrights and related rights in the North American Market were transferred to Counterclaim Plaintiff Misty

Mountain USA LLC, and subsequently assigned to Counterclaim Plaintiff BarbaraONeill.com LLC under the Second Assignment Agreement.

157. Counterclaim Plaintiffs' copyright ownership of *Sustain Me, A Handbook of Natural Remedies, The 9 Foundational Pillars for Health* (U.S. Copyright Registration No. TX0009412670 (2024)) is further evidenced by Certificates of Registration issued by the U.S. Copyright Office, which constitute prima facie evidence of validity and ownership under 17 U.S.C. § 410(c). A true and correct copy of this Certificate of Registration is attached hereto as **Exhibit 1**.

158. On information and belief, Counterclaim Defendants have reproduced, printed, marketed, and distributed unauthorized copies of the Copyrighted Works in the North American Market without license, permission, or authorization from Counterclaim Plaintiffs.

159. Counterclaim Defendants' distribution of the Barbara O'Neill Books and the Michael O'Neill Book through the website at *officialbarbaraoneill.com* and through a Texas-based distribution center constitutes factual copying of the Copyrighted Works.

160. The Copyrighted Works embody protectable original expression, including their literary content, text, compilation, and arrangement.

161. Counterclaim Defendants' unauthorized copies are substantially similar, if not identical, to the Copyrighted Works, and misappropriate the protectable expression contained therein.

162. Counterclaim Defendants' acts of infringement were willful, deliberate, and executed with full knowledge of Counterclaim Plaintiffs' exclusive copyright interests in the North American Market.

163. Specifically, Counterclaim Defendant Barbara O'Neill executed the First Assignment Agreement, accepted royalties, and consented to the use of her name in connection with the Copyrighted Works. Despite this knowledge, Counterclaim Defendants continued to print, market, and distribute infringing copies in competition with Counterclaim Plaintiffs.

164. As a direct and proximate result of Counterclaim Defendants' copyright infringement, Counterclaim Plaintiffs have suffered and continue to suffer irreparable harm to their exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, distribute, and publicly sell the Copyrighted Works.

165. Counterclaim Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502, impoundment of infringing copies under 17 U.S.C. § 503, damages and profits under 17 U.S.C. § 504, and costs and attorneys' fees under 17 U.S.C. § 505.

166. Because Counterclaim Defendants' infringement was willful, Counterclaim Plaintiffs are further entitled to enhanced statutory damages under 17 U.S.C. § 504(c)(2).

## COUNT XIII

*Breach of Contract*

167. Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

168. Beginning in or about 2023, Counterclaim Defendants Barbara and Michael O'Neill entered into an oral contract with Counterclaim Plaintiff Emma Loberg (the "Oral Agreement").

169. Under the terms of the Oral Agreement, Counterclaim Defendants Barbara and Michael O'Neill granted Counterclaim Plaintiff Emma Loberg the express, exclusive license to market, print, and sell the Barbara O'Neill Books and the Michael O'Neill Book and to operate under the BARBARA O'NEILL brand and sell BARBARA O'NEILL branded merchandise.

170. Counterclaim Defendants Barbara and Michael O'Neill understood and voluntarily entered into this Oral Agreement, and it is a valid and enforceable agreement.

171. Under the terms of the Oral Agreement, Counterclaim Defendants Barbara O'Neill and Michael O'Neill further agreed that Counterclaim Plaintiff

Emma Loberg would build and operate a dedicated e-commerce storefront to ensure reliable customer fulfillment and product availability.

172. Under the terms of the Oral Agreement, Counterclaim Defendants Barbara O'Neill and Michael O'Neill also agreed that Counterclaim Plaintiff Emma Loberg would finance production, manage storage, distribution, and marketing of the Barbara O'Neill Books, the Michael O'Neill Book, and merchandise, in exchange for the exclusive distribution rights described herein.

173. Under the terms of the Oral Agreement, Counterclaim Defendants Barbara O'Neill and Michael O'Neill further agreed that Counterclaim Plaintiffs would retain all profits from the sale of BARBARA O'NEILL branded merchandise and would remit royalties from book sales to Counterclaim Defendants.

174. Counterclaim Plaintiffs fully performed their obligations under the Oral Agreement, including: (a) financing and organizing numerous print runs of the Barbara O'Neill Books and the Michael O'Neill Book; (b) storing, fulfilling, and marketing the products at significant personal expense; (c) remitting at least $1,230,004.65 in royalties to Counterclaim Defendants between October 2023 and early 2025; (d) creating and maintaining the dedicated e-commerce platforms at MistyMountainUSA.com and later barbaraoneill.com; and (e) securing intellectual property assignments and registrations to formalize the parties' agreement.

175. Counterclaim Defendant Barbara O'Neill and Counterclaim Plaintiff Misty Mountain LLC executed the First Assignment Agreement to memorialize the aforementioned Oral Agreement in part.

176. Under the First Assignment Agreement, Counterclaim Defendant Barbara O'Neill expressly assigned and conveyed to Counterclaim Plaintiff Misty Mountain USA LLC all copyrights, trademarks, and rights of publicity in the North American Market.

177. The First Assignment Agreement was executed voluntarily by Counterclaim Defendant Barbara O'Neill before a notary public via Zoom.

178. Counterclaim Defendant Barbara O'Neill understood the terms of the First Assignment Agreement prior to executing it.

179. The First Assignment Agreement is valid and enforceable contract.

180. In reliance of the Oral Agreement and the First Assignment Agreement, Counterclaim Plaintiffs recorded copyright assignments, filed a U.S. trademark application for the mark BARBARA O'NEILL, and invested significant resources in publishing, distributing, and marketing books and merchandise under the BARBARA O'NEILL name.

181. Notwithstanding the First Assignment Agreement, Counterclaim Defendants breached the contract by at least the following: (a) authorizing or permitting the creation of the competing website at officialbarbaraoneill.com to

distribute the same books and merchandise already assigned to Counterclaim Plaintiffs; (b) making public statements that disparaged Counterclaim Plaintiffs' website at *barbaraoneill.com* and suggested that it was unauthorized; and (c) filing a competing U.S. trademark application for BARBARA O'NEILL in contravention of the assignment of trademark rights conveyed under the First Assignment Agreement.

182. Counterclaim Defendants' breaches have caused direct and substantial damages to Counterclaim Plaintiffs, including loss of exclusive control of intellectual property rights in the North American Market, diversion of customers and sales, impairment of trademark and goodwill, and reputational harm.

183. As a direct and proximate result of such breaches and Counterclaim Defendant Barbara O'Neill's breaches of the First Assignment Agreement, Counterclaim Plaintiffs have sustained damages in an amount to be proven at trial.

## COUNT XIV

*Attorneys' Fees (O.C.G.A. §13-6-11)*

184. Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

185. Based on all of the allegations set forth in the Counterclaims and Counterclaim Plaintiffs' response to the allegations in the First Amended Complaint and as will be shown at trial, despite Counterclaim Plaintiffs' good faith attempts to

resolve Counterclaim Defendants' infringement and misconduct amicably, Counterclaim Defendants have acted in bad faith, have been stubbornly litigious, and have caused Counterclaim Plaintiffs unnecessary trouble and expense.

186. Accordingly, Counterclaim Plaintiffs are entitled to recover all reasonable attorneys' fees and costs of litigation incurred in this civil action, pursuant Wisconsin law, or, in the alternative, O.C.G.A. § 13-6-11.

## COUNT XV

*Accounting and Disgorgement*

187. Counterclaim Plaintiffs reallege and incorporate by reference all preceding paragraphs of these Counterclaims as though fully set forth herein.

188. Counterclaim Defendants alone possess the books, records, and payment-processor data necessary to determine (a) the full amount of revenue they earned by exploiting Counterclaim Plaintiffs and the *barbaraoneill.com* goodwill, (b) the quantum of inventory shipped, and (c) the extent of advertising or sponsorship income derived from Counterclaim Defendants' YouTube and Patreon audiences.

189. Under Georgia and Wisconsin equity principles—and 15 U.S.C. § 1117(a) insofar as Counterclaim Defendants' profits stem from Lanham Act violations— Counterclaim Plaintiffs are entitled to a full accounting of all monies

received by Counterclaim Defendants from February 2025 forward that are attributable to the BARBARA O'NEILL brand in North America.

190. Once that accounting is rendered, equity further requires disgorgement of Counterclaim Defendants' ill-gotten gains to prevent unjust enrichment, to compensate Counterclaim Plaintiffs for lost sales, and to deter future misconduct.

191. Counterclaim Plaintiffs therefore request that the Court (a) order Counterclaim Defendants to produce a detailed accounting, under oath and supported by source documents, of all revenues, expenses, and profits related to the BARBARA O'NEILL mark and diverted inventory from February 2025 to present; (b) enter judgment disgorging those profits to Counterclaim Plaintiffs; and (c) award such other equitable relief as the Court deems just and proper, including the appointment of a special master if necessary to conduct the accounting.

## JURY DEMAND

Counterclaim Plaintiffs respectfully demand a jury trial on all issues so triable in the First Amended Complaint and in the Counterclaims.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs respectfully pray that the Court enter an Order providing for:

(a) An entry of judgment in favor of Counterclaim Plaintiffs and against Counterclaim Defendants as to the Counterclaims;

64

(b)    A dismissal of Counterclaim Defendants' claims in the First Amended Complaint with prejudice;

(c)    An injunction prohibiting Counterclaim Defendants from:

    i.    Continuing their use of the BARBARA O'NEILL mark or any confusingly similar designation;

    ii.    Representing directly or by implication that Counterclaim Plaintiffs lack authorization to market Barabra O'Neill Books and related merchandise;

    iii.    Representing directly or by implication that the Barbara O'Neill Books and the Michael O'Neill Book sold by Counterclaim Plaintiffs are counterfeit or otherwise disparaging their goods and services;

    iv.    Using or seeking to register confusingly similar marks, trade dress, or domains;

    v.    Calling Counterclaim Plaintiffs' storefront a "scam" or otherwise disparaging their goods and services; and

    vi.    Interfering with Counterclaim Plaintiffs' vendors, distributors, or contracts.

(d)     An order compelling Counterclaim Defendants to issue corrective statements to vendors, printers, and the public clarifying Counterclaim Plaintiffs' exclusive rights;

(e)     An order compelling Counterclaim Defendants to remove or revise any online content falsely labeling Counterclaim Plaintiffs' website a "scam" or that the *officialbarbaraoneill.com* site is the official website to purchase the Barbara O'Neill Books and the Michael O'Neill Book and related merchandise and similar misstatements.

(f)     Transfer of any infringing or confusingly similar domain names to Counterclaim Plaintiffs;

(g)     Monetary relief: actual damages, disgorgement of Counterclaim Defendants' profits, statutory or treble damages under 15 U.S.C. § 1117 and § 1125(d), and punitive damages under relevant state law;

(h)     Restitution of unjust enrichment, plus pre- and post-judgment interest as high as allowed by law;

(i)     A full accounting of Counterclaim Defendants' Market revenues;

(j)     Costs and reasonable attorneys' fees; and

(k)    An award of any such other and further relief as this Court deems just

and proper.

Respectfully submitted,

By:  /s/ April Meeks
Local Counsel
Anuj Desai (Bar No. 193889)
anuj.desai@agg.com
April Meeks (Bar No. 963911)
april.meeks@agg.com

ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, Georgia 30363
Tel: 404.873.7037

Derek R. Staub (*admitted pro hac vice*)
State Bar No. 24063017
dstaub@fbtlaw.com
Amy E. Lavalle (*admitted pro hac vice*)
State Bar No. 24040529
alavalle@fbtlaw.com

Frost Brown Todd LLP
2101 Cedar Springs Road, Suite 900
Dallas, Texas 75201
Telephone: 214.580.5826

**COUNSEL     FOR     DEFENDANTS
EMMA     M.     LOBERG,     MISTY
MOUNTAIN     USA     LLC,     and
BARBARAONEILL.COM LLC**

67

## <u>LOCAL RULE 5.1(C) CERTIFICATION</u>

Pursuant to Northern District of Georgia Local Rule 7.1(D), the undersigned certifies that this Proposed Order has been prepared in Times New Roman, 14-point type, one of the fonts and point sizes approved by the Court.

DATED:     August 25, 2025.

<u>/s/ April Meeks</u>

April Meeks

69